HARMON *v.* BYRAM'S ADM'R *et al.*

Decided November 1, 1877.

1. A subpœna served is not a sufficient *lis pendens*, unless a bill be filed; but when the bill is filed the *lis pendens* relates back to the service of the subpœna.

2. H. sues out his summons in chancery against B. on the 3d January 1872, which is served on the 6th of the same month; the bill is filed at February rules following; on the 20th January, after summons served and before bill filed, P. purchases the whole or a part of the land, which is proceeded against in the suit: HELD:

   P. is a *pendente lite* purchaser.

3. Generally a purchaser *pendente lite* need not be made a party to a bill or brought before the court.

4. Every person purchasing *pendente lite* is treated as a purchaser with notice, and is subject to all the equities of the persons, under whom he claims in privity; and it makes no difference whether the purchaser *pendente lite* be the claimant of a legal or equitable interest, or whether he be the assignee of the plaintiffs or defendants.

5. Section 14 of chapter 139 of the Code does not affect the common law doctrine of *lis pendens*, where a judgment lien had, under the provisions of the Code, been previously acquired on the land, and duly docketed.

Appeal from, and *supersedeas* to, a decree of the circuit court of Putnam county, rendered on the 24th day of April 1873, in a cause in chancery, pending then in said court, wherein John A. Harmon was plaintiff and Ben-

jamin P. Byram's administrator and others were defendants, granted upon the petition of Robert Patton.

Hon. Joseph Smith, Judge of the seventh judicial circuit, rendered the decree complained of.

JOHNSON, JUDGE, prepared the following statement of the case:

In February 1872 John A. Harmon filed a bill in equity in the circuit court of Putnam county, to enforce a judgment lien, alleging that the defendant, Byram, on the 14th day of March 1870, in the circuit court of Putnam county, confessed a judgment in his favor for $1,374.06⅔, and costs, and filed a copy of such judgment with his bill; that execution issued on said judgment, and was returned "no property found;" that his judgment was docketed, &c.; that the defendant owned a tract of land on Eighteen Mile creek, in Putnam county, and exhibited the deed as part of the bill; and that defendant was seized and possessed of several tracts of land in the county of Mason, and filed copies of deeds therefor; and that he believed he owned another tract of two hundred acres of land on said Thirteen Mile creek, but had been unable to find the title thereto, although he had had the records of Mason county searched therefor; and prayed that said real estate, or sufficient thereof to pay his said judgment, interest and costs, might be sold; and for general relief. The said Byram was summoned to answer the bill, but did not appear; and the bill was taken for confessed.

On the 24th day of April 1873, more than a year after the institution of the suit, one Robert Patton tendered his petition, alleging that in the month of January 1872 he entered into a contract in writing with Benjamin P. Byram, since deceased, by which the petitioner became the purchaser of all the lands, and interest in lands owned by the said Byram, lying in the counties of Mason, Putnam and Kanawha," a copy of which agreement, duly recorded in the county of Putnam

*will be filed herewith as soon as the same can be transcribed;* and petitioner prays, may be considered as part hereof." That by said agreement it will appear that the consideration in part of the sale and transfer of said lands, paid and assumed to be paid by petitioner, was not less than $2,900.00 of which $1,000.00 was acknowledged by said Byram to have been paid in hand, $600.00 assumed to Jas. Capehart of Point Pleasant, and $1,300.00 or more assumed to be paid in discharge of a judgment of John A. Harmon of Putnam county, the said agreement further provides that certain portions of the proceeds of said lands or some of them when sold were to be paid to said Byram. That said John A. Harmon had instituted a suit on the chancery side in the circuit court of Putnam county to subject to sale the most valuable portions of the lands, sold to your petitioner, to satisfy the said judgment of $1,300.00 or more, assumed to be paid by your petitioner, and in which suit said Harmon is now urging the court to render a decree for that purpose. That as soon after the purchase of said lands by petitioner, as he could make arrangements therefor, he caused a portion of the land sold to him, lying at the mouth of Thirteen Mile creek, to be laid off into town lots and other small sub-divisions, and advertised the same to be sold at public sale; and in the months of May and June 1872 made such sale, a portion for cash and the residue payable within one year, of lands and lots enough to discharge the entire sum assumed by the petitioner aforesaid to Byram, and to discharge the Capehart lien of $600.00. In this estimate is included a contract with the firm of Barron & Son for timber growing on a part of said land, on which contract there is now due the sum of $750.00; that at the time of said public sale petitioner proclaimed, in the hearing of all the purchasers, that the entire proceeds would be devoted to the extinguishment of said liens; agreements or title bonds were executed by petitioner to make good title to the purchasers, when purchase money was paid; that most of the purchase money was paid up as it became due

1877.
Special Term.

Harmon
v.
Byram's adm'r
et at.

but some influence unknown to petitioner, was brought to bear upon the purchasers in consequence of which, with rare exceptions, they determined to make no more payments until, by some action of the court, in which proceedings had been instituted to enforce the liens aforesaid, they could have some assurance that a clear title to the lands would be made to them on making payment of the final installment. Petitioner had employed Mr. George Rowley, living near the lands in Mason county, to make these sales and to collect the purchase money and apply the same to the liens aforesaid. The said Rowley has collected and applied of said proceeds more than $400.00 to the debt of said Harmon, and some $260.00 to the lien of said Capehart, and has now in his hands some forty bonds or notes, calling for a sum sufficient at least, with the money now in his hands, to pay off the balance of the debt due to Harmon; that there is a suit pending in the circuit court of Mason county, to enforce the lien held by said Capehart against the lands lying in that county, in which such proceedings have been had that a special commissioner has been appointed to sell said land. This decree was rendered prior to the collection of the purchase money by petitioner on said lands. In that suit, at a term of the court held the present month, petitioner was admitted as a party, and through his counsel proposed to consent, after the collection of the money due from the purchasers of said lots, that so much of said lands as might be necessary to discharge not only the debt of said Capehart, but that of the plaintiff in this suit, might be sold by a special commissioner, to be named for that purpose. But as the personal representatives and devisees of said Byram were not before the court, no decree could be entered. The petition further shows that the devisees of said Byram had tendered their joint and several answers to the bill of John A. Harmon, admitting the truth of the main allegations thereof. They aver, that they are the devisees and owners of all the property, of which Byram died seized; to prove

which they exhibit the will of said Byram, admitted to record in the county of Putnam in March 1873. In this answer, they consent that the lands in the bill mentioned may be sold for the satisfaction of Harmon's judgment, but ask that the Thirteen Mile creek tract be sold first. Petitioner calls attention to the fact that the will was executed in 1861, and the contract ten years afterwards. The petitioner charges that the will did not operate on any of the lands embraced in the agreement; and that said devisees well knew, that said Byram had revoked said will as to said lands, and that they were the property of the petitioner, and that their consent could not affect the rights of petitioner, nor authorize the sale of the said lands; they also knew that petitioner through said Rowley had sold to *bona fide* purchasers and at a fair price a large part of the Thirteen Mile creek tract of land, which they urge the court to decree to be sold first, and thereby perpetrate a gross wrong against innocent purchasers, who had paid a large portion of the purchase money, and at the same time had the court to enter a decree, which, under any aspect of the case, would be erroneous, in re-selling sold land, before that which is unsold. The prayer of the petition is that petitioner may be a defendant to the suit, and that petition may be taken, not only as an answer, but also as a cross-bill, *that the defendants*, and each of them be required to answer the same; that George Rowley be made in like manner a defendant in the suit, and required to answer and say, what sum of money is in his hands arising from sale of lands, and what sum is due and uncollected, and how much of the Thirteen Mile creek tract remains unsold; and that such other order be made in the case, as may be necessary to preserve and promote the interests of all parties; and for general relief.

The petition is sworn to by the counsel for the petitioner.

On the same day the petition was tendered, the administrator, with the will annexed, of Benjamin P. By-

ram, deceased, and the devisees under the will of said Byram, filed their joint and several answer to the bill of complaint, in which they admit the most of the material allegations thereof. The answer sets up the will of said B. P. Byram, deceased, and claims that the devisees under said will are the owners of all the property of which said Byram died siezed, subject to the payment of his debts; that defendants are anxious that said debts shall be paid, and are willing that so much of the lands of the testator, as may be necessary, should under the direction of the court be sold, to pay the lien of plaintiff's judgment; but respondents prefer, if it meets the approbation of the court, that the lands lying and being in Mason county on Thirteen Mile creek, set out and described in complainant's bill, should first be sold to pay complainant's demand, and if that should not be sufficient, then the lands in Putnam county should be sold to satisfy any balance remaining unpaid. The answer also averred "that there should be two credits placed on said judgment for money paid them since the rendition of the same, to-wit: one for $297.80 as of —— day of June 1872; and the other for $200.00 as of the 28th day of August 1872, as they have been informed and believe in the case. The will accompanies the answer as an exhibit, and is as described in said answer. On the same day, to-wit: on the 24th day of April 1873, a decree was rendered in the cause. It provides as follows: "It appearing to the court that the defendant Benjamin P. Byram has departed this life since the last term of this court, upon motion of David Jones, administrator with the will annexed of the said Benjamin P. Byram, deceased, it is ordered that this suit be revived, and henceforth be conducted against the said David Jones, administrator as aforesaid, and David Jones, Martha Ann Jones and Benjamin B. Jones, the only devisees of the said Benjamin P. Byram, deceased, under his said will. And then comes Robert Patton, and asked leave to file his petition to be made a party defendant,

and for other purposes in this cause, to the filing of which plaintiff by counsel objected; and the objection being argued by counsel, it is ordered by the court that leave to permit the said petition to be filed be refused. And thereupon the said new defendants tendered their joint and several answers to the complainant's bill, and asked leave to file the same, which is ordered to be done, and to which the complainant replies generally." The decree proceeds, that the cause was heard upon the bill, and exhibits filed therewith, and the joint and several answers of the defendants, and replications thereto, and former orders and proceedings had in the cause; and the court decreed that unless the defendants, the devisees under the will of B. P. Byram, deceased, pay the sum of $1,130.30, with interest and costs within thirty days from the end of the term, that the lands lying on Thirteen Mile creek in Mason county be sold to pay the said lien; and if the said lands did not sell for an amount sufficient to pay the same, that the Putnam county lands should be sold to pay the residue. It will be observed, that by the decree a credit of over $400.00 was allowed on the judgment.

From and to the foregoing decree the said petitioner Robert Patton was allowed an appeal and *supersedeas*.

*James M. Laidley,* for appellant :

*Hoge & Harvey,* for appellees :

JOHNSON, JUDGE, delivered the opinion of the Court.

The question presented in the record is: Did the petitioner, Robert Patton, under the circumstances, have the right to be made a defendant to the cause, and did the court err in denying him leave to file his petition? Counsel for the petitioner insists that the court did err in so refusing the leave to file the petition, and assign a number of errors. The first is that " the petition sought to be filed, and the accompanying exhibit dis-

*1877.
Special Term.*

Harmon
v.
Byram's adm'r
*et al.*

closed facts which rendered it illegal, unjust and oppressive, to enter the decree complained of, until an opportunity had been afforded the petitioner to establish facts therein alleged. Some of the facts are abundantly established by the exhibit filed with the petition." It must be remembered that there is absolutely nothing in the record to show, that the court below ever saw the exhibit referred to in the petition. The petition was tendered on the 24th day of April 1873, and on that day the decree of sale was rendered, and the petition itself declares, with reference to said exhibit," "a copy of which agreement, duly recorded in the county of Putnam, will be filed herewith, *as soon* as the same can be transcribed, and which petitioner prays may be considered a part thereof." It is not designated in the petition by any mark, as an exhibit, and the record does not disclose that it ever was filed; it is true that a paper purporting to be an agreement between Benjamin P. Byram and Robert Patton, dated June 20, 1872, is copied in the record: but how it came into the file we are not informed; certainly there is no evidence that it was before the court when the decree was rendered. The case must stand upon what is alleged in the petition, unproved by anything that may be in the so-called exhibit. The second error assigned is: That "even if upon the hearing of the matter of said petition, the court should have deemed them insufficient to delay the rendering of the decree complained of, it was a gross violation of the principles of natural justice to refuse permission to the petitioner to *allege* and show, if he could, the existence of such facts; for the refusal to allow the petitioner to *file* his petition is equivalent in force and effect to denying him the right to *assert* that he has rights in the property in controversy."

.. It could have no such effect; he might have rights in the property in controversy, and yet have no right to be a party to the suit. He was a *pendente lite* purchaser, as we shall hereafter show. If he had no right to be a

defendant to the suit, then it would have been a vain thing to have allowed him to file his petition. If, by filing his petition, he had no right to delay the cause, and prevent the rendering of the decree that was rendered in the cause, it would certainly have not availed him anything to have filed his petition, and he is not prejudiced thereby.

Another error assigned is, "that it appears by the agreement aforesaid that Patton had assumed, in part payment of the price of said lands, to pay the plaintiff (Harmon's) debt, as well as the debt to Capehart's executor. On this fact being known to the court, taken in consideration with the allegation of said petition, that he had paid part of said debts, and had sold of the lands in controversy enough to pay the residue of said debts, it was error to refuse permission to said Patton to show these facts." If he had agreed to pay the Harmon debt, why did he not pay it? He certainly could not ask Harmon, who had nothing to do with any agreement between himself and Byram, to *wait* until he could collect money enough off the parties, to whom he had sold any of the lands, to pay the said lien. The allegation as to payment of any part of the Harmon debt is vague, and indefinite; it is: "Your petitioner employed Mr. Geo. Rowley, living near the lands in Mason county, to make these sales, and to collect the purchase money, and apply the same to the lien aforesaid. The said Rowley has collected and applied of said proceeds more than $400.00 to the debt of said Harmon." It is not said how, when or to whom, the money was paid. In the joint and several answers of the administrator, with the will annexed, and devisees of said Byram, it is claimed " that there should be two credits placed on said judgment for money paid thereon since the rendition of the same, to-wit: One for the sum of $297.80 as of the — day of June 1872, and the other for $200.00 as of the 18th day of August 1872, as they have been informed and believe is the case. It is presumed that this

is the same money referrrd to in the petition; and as there is was more than $400.00 credited on the judgment by the decree, the petitioner has no right to complain of that matter. It is further claimed as error, that the decree required the sold lands to be *first* sold instead of last. If "sold" lands refers to the sale of the lands to Patton, the petitioner, by Byram, then according to the petition they were *all* sold-lands, and it could make no difference which were offered first;.if by this is meant lands that Patton had sold,.the answer to.that objection is, that the name of a single purchaser from him is not mentioned in his petition, and not one of such purchasers made any complaint. On this point under the circumstance appearing in the case, the petition is not sufficient to allow the petitioner to be made a defendant to the suit.

It is assigned as error, " to decree the sale of the lands, in the face of the allegations of said petitioner, that he had already sold to *bona fide* purchasers at a fair price sufficient of the same land to satisfy the plaintiff's demand, before inquiry had been made on this point. This assignment is not worthy of serious consideration. It would be monstrous to hold that a judgment lienor under the circumstances of this case, should be arrested in his effort to enforce his lien, until the debtor or his vendee had sold lands and collected the money sufficient to pay the debt, or wait until he had collected by suit or otherwise sufficient money to discharge the lien. It is also assigned as error, " to decree the sale of the land, when it appeared to the court, that there were *bona fide* owners of the equitable title thereof, without giving such owner, an opportunity of showing their rights in the premises." It does not appear what equitable owners there were except Patton himself, and he claims to be a legal owner. The petition does not show, that anybody had any right to prevent the judgment lienor from enforcing his lien and again those alleged "equitable owners," if such there be, were not asking anything of the court.

It is also assigned as error, "to enforce the lien of a

judgment on land when it appeared to the court that the legal title was not then in the judgment debtor, but in the petitioner or in some purchaser from him for value, without giving the petitioner and those claiming under him an opportunity of exhibiting their rights." The question whether the petitioner showed he had a legal or other title to any of the lands sought to be sold will not be discussed here. Taking his petition to be true, he was a *pendente lite* purchaser, and all the rules of equity with reference to the rights of such purchaser must apply to him if he was a purchaser. Generally speaking an assignee *pendente lite* need not be made a party to a bill, or be brought before the court, for every person purchasing *pendente lite* is treated as a purchaser with notice, and is subject to all the equities of the person, under whom he claims in privity. And it will make no difference whether the assignee *pendente lite* be the claimant of the legal or of an equitable interest, or whether he be the assignee of the plaintiffs or of the defendants. Story's Eq. Pl. section 156. There can be no doubt that Patton was a purchaser *pendente lite*. The subpœna was issued on the 3d day of January 1872, and was served on the defendant Byram on the 6th of the same month. On the 20th of January of the same year the purchase was made; and the bill was filed at February rules following. A subpœna served is not a sufficient *lis pendens*, unless a bill be filed; but when the bill is filed, the *lis pendens* begins from or relates back to the service of the subpœna. 3 Sug. 459; *Newman* v. *Chapman*, 2 Rand. 93.

The common law doctrine of *lis pendens*, as applied to this case, is in no way affected by sec. 14 of chap. 139 of the Code, which provides that: "The pending of an action, suit or proceeding to subject real estate to the payment of any debt or liability, upon which a previous lien shall not have been acquired in some one or more of the methods prescribed by law, shall not bind or affect a purchaser of such real estate, unless, and until a memorandum, setting forth the title of the cause, the court

66

1877.
Special Term.

Harmon
v.
Byram's adm'r
et al.

in which it is pending, the several objects of the suit, the location and quantity of the land, as near as may be, and the name of the person whose estate therein is intended to be affected by the action or suit, shall be filed with the recorder of the county in which the land is situated;" because in this case a lien by judgment had been previously acquired, and duly docketed. We do not think the petitioner, Patton, showed in his petition a right to be made a defendant in said cause. Whether if he had such right, he could or could not have appealed from the whole decree, or from such part as denied him the right to be made a defendant, we will not now decide; as the question does not properly arise in the record.

For the foregoing reasons I am of opinion, that the appeal was improvidently allowed ; and it is therefore dismissed at the costs of the appellant.

APPEAL DISMISSED.