# CHARLESTON.

O'Connor *v.* O'Connor *et al.*

(Brannon, President, *dissenting.*)

Submitted June 8, 1898—Decided November 26, 1898.

1  Fraudulent Conveyance—*Deed—Possession of Deed—False Pretense—Fraud.*

P. executed an absolute deed for his land to J. P., in consideration of one thousand nine hundred dollars cash, dated June 1, 1893; and J. P., not being ready at the time said deed was executed to pay the cash, obtained possession of the deed on pretense that he wished to take it to a neighboring town to show it to a man, and at the same time executed a writing, and delivered it to P., reciting the purchase of the land for one thousand nine hundred dollars, and the execution of the deed, and agreeing that, if the sum of one thousand nine hundred dollars was not paid to P. in three days, then the deed should be null and void, but, if the said money was paid as aforesaid, the deed was to be of full effect. J. P. obtained possession of said writing, and, without authority of P., changed it so to read "June 15th," instead of "June 3d," and, on the same day on which said deed was executed, conveyed said land to O. C. W., both of which deeds were placed on record, but no part of the purchase money was ever paid. Said deed was fraudulent and void as to P. (p. 368).

2.  Pendente Lite Purchaser—*Fraudulent Conveyance—Equities.*

On the 15th day of August, 1893, a suit in equity was instituted to set aside said deed as fraudulent and void by P., making J. P. and O. C. W. parties defendant. After process in said suit had been served, but before the bill had been filed, O. C. W. executed a deed for said land to the R. C. C. & C. Co. Said company thereby became a *pendente lite* purchaser, and took said

land subject to the equities in litigation in said bill, and was bound to abide by its result.   (pp. 360-364).

3.   POWER OF ATTORNEY—*Construction.*

On the 23d day of June. 1893, P. entered into an executory contract with L. H. K., by which he agreed to sell him said tract of land upon the terms and for the consideration therein set forth, and on the same day executed to L. H. K. a power of attorney, wherein he recited the facts in regard to his sale to J. P., his fraudulent conduct and failure to pay the purchase money, and also as to the sale to L. H. K. and authorized L. H. K. to institute and prosecute to final hearing a proper suit in equity in his name, or in the name of L. H. K., as it might appear proper, for the purpose of setting aside and annulling said deed of conveyance to J. P., the deed to O. C. W., and any other contracts that might have been made in reference to said tract of land; authorizing said L. H. K., to settle any and all matters of difference between him (P.) and J. P. (it appearing that there were several matters of account existing between P. and J. P.) and to attend to all business affairs of his generally.   Subsequently J. P. paid to L. H. K. one thousand dollars of the original purchase money for said land, which P. declined to receive, and shortly afterwards brought suit to set aside his deed to J. P. as fraudulent and void.   *Held,* that in the circumstances of the case, and in view of the facts set forth on the face of said power of attorney, it was not the intention of P. to authorize L. H. K. to receive and collect said purchase money from J. P., and its reception by L. H. K. did not ratify and confirm the sale to J. P., or waive the effect of the fraud.   (p. 367).

ON REHEARING.

ADMINISTRATORS—*Appeal—Fraudulent   Conveyance—Pendente   Lite   Purchaser.*

An administrator with the will annexed of a decedent who is indebted at the time of his death, and who leaves nothing with which to satisfy the same except a tract of land which has been obtained from him by fraud, to set aside which fraudulent conveyance from him a suit had been instituted by such decedent, and determined adversely to him in the circuit court, has the right to prosecute an appeal from said decree, holding that a purchaser from said fraudulent grantee, indirectly, during the pendency of such litigation, was an innocent purchaser, and entitled to hold the property.   (p. 372).

Appeal from Circuit Court, Randolph County.

Suit by Patrick O'Connor against J. P. O'Connor, the Roaring Creek Coal & Coke Company and others, to set aside conveyances of land as fraudulent.   From a decree in

favor of the coal and coke company, John L. Hechmer, plaintiff's administrator c. t. a., appeals.

*Reversed.*

SAMUEL V. WOODS and J. A. BENT, for appellant.

E. D. TALBOTT, BROWN JACKSON & KNIGHT, C. F. TETER, and FRED O. BLUE, for appellees.

ENGLISH, JUDGE:

This was a suit in equity brought in the circuit court of Randolph County by Patrick O'Connor against J. P. O'Connor and O. C. Womelsdorff, which litigation grew out of the following state of facts: On the 11th day of May, 1893, Patrick O'Connor, who was then about ninety years of age, entered into an executorial contract with his nephew J. P. O'Connor for the sale of two hundred and five acres of land, which was the whole estate of said Patrick O'Connor, situated in Randolph County, in the Roaring Creek coal field, at the price of one thousand eight hundred dollars, one-half of which was to be paid when the land was run out and the records examined, and the residue in two installments, payable in three months and six months from the date of the deed; stating that five dollars was paid, and the residue of said half was to be paid when said Patrick fulfilled his part of the contract. This paper does not appear to have been acted upon by either party. On the 1st of June, 1893, the plaintiff executed to J. P. O'Connor a deed for this land, absolute upon its face, in consideration of one thousand nine hundred dollars recited in the deed as in hand paid, but not in fact paid at all, which deed was acknowledged before the notary who wrote it on that day. On the same day, and at the same time, said J. P. O'Connor delivered to the plaintiff a written memorandum signed by him, reciting the execution of the deed, stating that it recited the payment of the purchase money, and agreeing that, unless said John P. O'Connor brought and delivered to the plaintiff the said one thousand nine hundred dollars by the 3d day of June following, then the deed was to be null and void. While this memorandum dated June 1, 1893, was in possession of the plaintiff, and after the time in which John P. O'Connor was

to pay the one thousand nine hundred dollars in order to have title to said land, he obtained possession of said paper from the plaintiff, representing that he wished to examine the same, and wrote over the figure "3" the figure "15," thereby extending the time in which he might make the said payment. This change is admitted, but the defendant denies that it was made without authority. On the same day John P. O'Connor executed a deed for this land, conveying the same to O. C. Womelsdorff, at the stated price of twenty-five dollars an acre (the real price being fifteen dollars), of which three thousand five hundred and eighty-seven dollars and fifty cents was recited as paid in hand, and the receipt thereof acknowledged, seven hundred and sixty-eight dollars and seventy-five cents was to be paid in three months, and the like sum on the 1st of December, 1893, and a vendor's lien was retained to secure the deferred payments. But O. C. Womelsdorff, the grantee therein, was not present, and never saw the deed, nor agreed to the terms thereof, unless the allegations of the deed be true, until more than ten days thereafter, when the deed was recorded. This deed was acknowledged by O'Connor and his wife on June 2, 1893. These deeds were both recorded in Randolph County on the 10th day of June, 1893, on motion of John P. O'Connor, who states that the consideration of this deed was fixed at twenty-five dollars an acre, instead of fifteen dollars, because said Womelsdorff requested it to be done. On June 23d Patrick O'Connor made to L. H. Keenan an executory contract under seal, and acknowledged it, agreeing to sell him this land at ten dollars an acre; one thousand dollars to be paid when the deed was delivered, and the residue in one year. This paper was recorded on the 24th day of June. On the same day Patrick O'Connor executed to said Keenan a power of attorney, reciting the execution of the deed to John P. O'Connor on the 1st day of June, 1893, conveying the two hundred and five acres of land at the price of one thousand nine hundred dollars cash, the receipt of which was thereby acknowledged as paid; and reciting that he had taken from John P. O'Connor a writing, signed by him, showing that if the said purchase money was not paid by June 3, 1893, the deed was to be null and

void, and that the said purchase money had never been paid, and that, contrary to agreement, the said deed had been placed on record in the clerk's office of Randolph County; and reciting that he was informed that John P. O'Connor had sold said land to O. C. Womelsdorff; and stating further that by memorandum in writing dated June 23, 1893, the plaintiff had sold said land to L. H. Keenan, and that he was entitled to have the same conveyed to him free from the claims of John P. O'Connor and said Womelsdorff; and authorizing said Keenan to institute any proper suit for the purpose of setting aside and annulling the deeds to John P. O'Connor and to said Womelsdorff, and any other contracts that might have been made in relation to said land, except the one to Keenan; and stating that Keenan was authorized to settle any and all matters of difference between the plaintiff and said John P. O'Connor and to attend to all his business affairs generally,—which paper was recorded on 26th day of June, 1893. About the 11th day of July, 1893, said John P. O'Connor paid Keenan one thousand dollars of the said one thousand nine hundred dollars, which he still has; the plaintiff refusing to receive it, or to ratify the action of Keenan in respect thereto. The bill in this case charges a combination and conspiracy between the defendants to cheat and defraud the plaintiff out of the title and ownership of his land, and prays that their deeds may be set aside as fraudulent and void, and for general relief. On the 1st day of September, 1893, after the writ had been served upon the said defendants, but before the bill was filed, O. C. Womelsdorff conveyed this land. by deed of that date, to the Roaring Creek Coal & Coke Company, a corporation, which assumed the unpaid purchase money, which deed was recorded September 9, 1893. At the January rules 1894, they filed an amended bill against the same defendants, together with said coal and coke company, to set aside its said deed as void, and for general relief. On the 14th of May, 1895, the cause was heard and a decree rendered holding the deed of John P. O'Connor fraudulent and void as to the plaintiff, but holding that the Roaring Creek Coal & Coke Company was an innocent purchaser without notice, and that the plaintiff, as against that company, was

not entitled to have his deed to John P. O'Connor, and John P. O'Connor's deed to Womelsdorff, and Womelsdorff's deed to said company, set aside, or the title restored to him but that the said company was entitled to have the title confirmed to it; and further holding that by reason of the fraud of John P. O'Connor, of which the court found him guilty, he was entitled to reap no benefit or pecuniary profit by reason of his sale to Womelsdorff, but that the plaintiff was entitled to the full benefit thereof, and that of the one thousand five hundred and thirty-seven dollars and fifty cents actually paid to John P. O'Connor by Womelsdorff, one thousand dollars of which went to Keenan, he should account to the plaintiff for five hundred and ninety-nine dollars and thirty-one cents, the amount thereof, and the plaintiff should have the privilege of a settlement with said Keenan for the one thousand dollars paid by John P. O'Conner to Keenan; and ordering Womelsdorff to pay the residue, one thousand five hundred and thirty-seven dollars and fifty cents, with interest from June 1, 1893, to the plaintiff,—holding that the actual price Womelsdorff paid for the land was fifteen dollars an acre. This decree further provided that, upon the payment of this money by Womelsdorff, his vendee should have the land discharged from the vendor's lien, but, if default was made, the land was directed to be sold in the manner therein prescribed; and from this decree the plaintiff applied for and obtained this appeal.

The first assignment of error relied upon by the appellant is claimed to be in the action of the circuit court holding that the deed executed by said Patrick O'Connor to John P. O'Connor on the 1st day of June, 1893, was fraudulent and void as to said Patrick O'Connor, but that the Roaring Creek Coal & Coke Company was an innocent purchaser of the said land, without notice of such fraud, because the said coke company was a *pendente lite* purchaser, and was not entitled to any notice of the pendency of this suit, under section 13 of chapter 139 of the Code, because this was not a suit or proceeding "to subject real estate to the payment of any debt or liability," within the meaning of that section, and because the contract and power of attorney between Patrick O'Connor and L. H. Keenan were

recorded, in which Patrick O'Connor expressly repudiated this sale and the sale to O. C. Womelsdorff, and directed the institution of proper suits to vacate the same.

In considering this assignment of error, let us first look to the question raised by the fact that the Roaring. Creek Coal & Coke Company purchased this land from Womelsdorff on the 1st of September, 1893, after the suit was brought, but before the bill was filed. If Womelsdorff, under all the circumstances of this case, could have conveyed this land, yet said coal company was a *pendente lite* purchaser, and was bound to take the land with all the burdens sought to be imposed by the suit. Upon the question as to whether said coal company in this instance should be considered a *pendente lite* purchaser, attention is called to the case of *Harmon* v. *Byram's Adm'r*, 11 W. Va., 511, in which case the second point of the syllabus reads as follows: "H. sued out a summons in chancery against B. on the 3d day of January, 1872, which is served on the 6th of the same month. The bill is filed at February rules following. On the 20th of January, after summons served, and before bill filed, P. purchases the whole or a part of the land which is proceeded against in the suit. Held, that P. is a *pendente lite* purchaser." In point 4 of the syllabus in the same case it is held that "every person purchasing *pendente lite* is treated as a purchaser with notice, and is subject to all the equities of the person under whom he claims in privity; and it makes no difference whether the purchaser *pendente lite* be the claimant of a legal or equitable interest, or whether he be the assignee of the plaintiff or defendant." It was also held by this Court in the case of *Zane* v. *Fink*, 18 W. Va., 693 (Syl. point 1), that: "Ordinarily the decree of the court binds only the parties and privies in representation or estate, but he who purchases, during the pendency of a suit is held bound by the decree that may be made against the person from whom he derives title. The litigating parties are exempted from taking any notice of the title so acquired, and such purchaser need not be made a party. This rule, however, is modified to a considerable extent in some cases by our statutes in relation to recording *lis pendens;* and there are perhaps some other exceptions to the rule, in

part, according to the principles governing courts of equity." The same principle is stated in the case of *Lynch* v. *Andrews*, 25 W. Va., 751.

Can there be any question in this case that the Roaring Creek Coal & Coke Company was a *pendente lite* purchaser of the tract of land in controversy? The purchase was made on September 1, 1893, the suit was instituted on the 15th day of August, 1893, and the process had been served before this purchase was made and before the bill was filed. The process having been served on the defendant Womelsdorff on the 18th day of August, and on John P. O'Connor on the 23d of August, and the bill filed at October rules, the *lis pendens* related to the service of the writ. From that time the suit was pending, and the said Roaring Creek Coal & Coke Company must be regarded as a *pendente lite* purchaser, unless the statute found in section 13 of chapter 139 of the Code requires that, under the circumstances of this case, notice of the pendency of said suit should have been recorded in order to affect said purchaser. That section provides that "the pendency of an action, suit, attachment, or proceedings to subject real estate to the payment of any debt or liability upon which a previous lien shall not have been acquired in some one or more of the methods prescribed by law shall not bind or affect a purchaser of such real estate for a valuable consideration without notice, unless and until a memorandum setting forth the title of the cause, the court in which it is pending, the general object of the suit, attachment, or other proceeding, the location and quantity of the land as near as may be, and the name of the person whose estate therein is intended to be affected by the action, suit, attachment, or proceeding, shall be filed with the clerk of the county court in which the land is situated," which is required to be recorded without delay in the deed book, and indexed in the name of both parties. We find the doctrine in regard to purchasers *pendente lite* stated by Story in his Equity Jurisprudence (volume 1, p. 411, § 405), where the author says: "It is upon similar grounds that every man is presumed to be attentive to what passes in the courts of justice of the state or sovereignty where he resides. And therefore a purchase made of property act-

ually in litigation, *pendente lite*, for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree in the suit;" citing the case of *Tilton* v. *Cofield*, 93 U. S., 163, in which it is held that "a purchaser of property *pendente lite* is as conclusively bound by the results of the litigation as if he had from the outset been a party thereto." Story, in the same volume (page 412, § 400), says: "Ordinarily it is true that the decree of a court binds only the parties and their privies in representation or estate  But he who purchases during the pendency of a suit is held bound by the decree that may be made against the person from whom he derives title.  The litigating parties are exempted from taking any notice of the title so acquired, and such purchaser need not be made a party to the suit.  Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy, for otherwise alienations made during a suit might defeat its whole purpose, and there would be no end of litigation." In the case of *White* v. *Perry*, 14 W  Va., 66, JUDGE GREEN, in delivering the opinion of the Court, on page 76, says: "The doctrine of *lis pendens*, however necessary, is harsh in its effect upon *bona fide* purchasers, and has always been confined in its operation to the extent of the policy on which it was founded,—that is, to give full effect to the judgment or decree which might be rendered in the suit depending at the time of the purchase (the *lis pendens*,)— and it applied only to proceedings directly relating to the thing or property in question.  *  *  *  This suit pending at the time that the deed was made by Perry to the appellant in the case before us was an action of debt to recover a personal judgment against Perry.  The object of this suit was not to subject Perry's lands to sale.  The suit for that purpose was not instituted till after the deed had been made by Perry to Tolly, and duly recorded. The rule of *lis pendens* has, therefore, no application in this case."  In the case of *Wilfong* v. *Johnson*, 41 W. Va., 283, (23 S. E. 730),—very similar in many points to the one under consideration,—HOLT, JUDGE, in delivering the opin-

ion of the Court, on page 287, 41 W. Va., and page 731, 23 S. E., says: "The evidence shows that these grantees from the defendant Johnson learned through an agent who examined the records for them that Samuel O. Johnson had a general warranty deed for the land in controversy from the defendants to the petition, Mrs. Wilfong and husband, for consideration of fifty dollars in hand paid. He found no liens or judgments against the land, and considered Samson O. Johnson's title to the land as good as any man's title could be to land. But if he had looked further, and in the other clerk's office, he would have found a suit pending for setting aside the deed of which he speaks as obtained by misrepresentation and fraud; and whether he looked for it or not, or, having searched the records, failed to find it, this pending suit had the effect of notice to his principal. This doctrine is founded on the policy that real property which is specifically sued for shall abide the result of the suit; for otherwise, by successive alienations, the litigation might be indefinitely prolonged [citing *Arnold* v. *Casner*, 22 W. Va., 444; *Zane* v. *Fink*, 18 W. Va., 693; *Harmon* v. *Byram's Admr's*, 11 W. Va., 511]. It does not come within the letter or meaning of section 13 of chapter 139 of the Code, requiring a memorandum of *lis pendens*, in certain cases, to be recorded."

In determining whether it was necessary in the case at bar to record a *lis pendens* in order to affect the Roaring Creek Coal & Coke Company with notice of the suit, it is necessary we should refer to the record; and in so doing we find that the object of this suit, as it was in the case of *Wilfong* v. *Johnson*, was to set aside as fraudulent and void the deed made by the plaintiff to J. P. O'Connor, and by J. P. O'Connor to Womelsdorff, and that it was not a proceeding to subject real estate to the payment of a debt or liability, and therefore it was not necessary to record a *lis pendens* to give notice to the Roaring Creek Coal & Coke Company of the suit which was pending at the time of its purchase. Counsel for the appellees contend that, under the circumstances of this case, it was necessary to record a *lis pendense* to give said coal company notice and prevent it from being an innocent purchaser, and rely upon the case of *De Camp* v. *Carnahan*, 26 W.

Va., 839. A reference to that case, however, shows that it was an attachment suit in equity to subject land to the payment of a debt. The third point of the syllabus of that case reads as follows: "Where an attachment suit in equity was instituted to subject land to the payment of a debt, and the land was sold under a decree in said cause, and a deed was made for the property to the purchaser at said sale, but after the levy of the attachment the debtor conveyed, for a valuable consideration, the land to another, and no *lis pendens* was recorded as is required by section 14 of chapter 139 of the Code, the purchaser from the debtor will hold the land as against the purchaser under the decree."

In the light of the rulings above quoted, my conclusion is that the circuit court erred in holding that the Roaring Creek Coal & Coke Company was an innocent purchaser of the two hundred and five acres of land in controversy, and that for that reason the plaintiff was not entitled to have the deed from J. P. O'Connor to O. C. Womelsdorff and from O. C. Wolemsdorff to said company set aside as to said company. The finding of said decree that the deed executed by Patrick O'Connor to J. P. O'Connor on the first day of June, 1893, was fraudulent and void as to Patrick O'Connor is not complained of as error by the appellant.

The remaining question for discussion in this case is as to the proper construction and effect of the power of attorney executed by the plaintiff, Patrick O'Connor, to L. H. Keenan. It seems that the plaintiff on the 23d of June, 1893, made an executory contract whereby he agreed to sell him this same two hundred and five acres of land at ten dollars per acre,—one thousand dollars to be paid when the deed was delivered, and the residue in one year,— which paper was recorded on the 24th day of June, 1893, and on the same day said Patrick O'Connor executed to said Keenan a power of attorney which reads as follows: "Whereas, on the 1st day of June, 1893, I executed a deed of conveyance to John P. O'Connor for a certain tract of land, containing two hundred and five acres, situated in Randolph Co., W. Va., on the waters of Roaring creek, at the price of $1,900 cash, and acknowledged the receipt of the payment of said money to me in said deed, and took

from the said O'Connor a paper writing, signed by him, showing that if the purchase money aforesaid should not be paid to me by the 3rd day of June, 1893, then the deed was to be null and void; and whereas, the said O'Connor has never paid me the said purchase money, and has contrary to the said agreement in writing with me, placed the said deed of conveyance on record in the clerk's office of the county court of said county, and, as I am informed, has sold said land to one O. C. Womelsdorff; and whereas, by contract in writing bearing date of June 23rd, 1893, I have sold said tract of land to L. H. Keenan, who is entitled to have the same conveyed to him free from the claims of the said O'Connor and Womelsdorff, or either of them: Now, therefore, I hereby authorize the said Keenan to institute and prosecute to a final hearing a proper suit in equity in my name and his name, or in the name of either, as it may appear proper to do for the purpose of setting aside and annulling the said deed of conveyance to the said O'Connor and the deed of conveyance to the said Womelsdorff, and any other contract or deeds of conveyance that may be made or have been made in relation to the said tract of land, other than the one made by me to the said Keenan, and that said Keenan is authorized to settle all matters of difference between me and the said O'Connor, and attend to all business affairs of mine generally.  Witness my hand and seal June 24th, 1893.  [Signed]  Patrick O'Connor.   [Seal.]"  Which power of attorney was duly acknowledged and recorded.  It appears from the testimony of L. H. Keenan that he entirely ignored the executory contract between himself and Patrick O'Connor, because he states that some time subsequent to the date thereof he tried to sell said land to O. C. Womelsdorff, simply as the agent of Patrick O'Connor.  It appears from the testimony of L. H. Keenan:  That on the 11th day of July, 1893, he met J. P. O'Connor, the defendant, and told him that the one thousand nine hundred dollars cash that was to be paid by him to Patrick O'Connor had not been paid, and he wanted to collect the same.  After discussing the transaction, J. P. O'Connor said that he would pay one thousand dollars, which sum he did pay that day, and was to execute his note for the remaining nine hundred, to

bear date July 11, 1893, with interest, with good security, to be approved by Patrick O'Connor. He was to have a few days, or a reasonable time, in which to make such note and give security. He was to give as security on the note Candolph Phillips and others. He received the one thousand dollars and deposited it in the bank in the name of "L. H. Keenan, attorney for Patrick O'Conner." He told Patrick O'Connor what he had done, and O'Connor said that was not in accordance with the deed and agreement, and he would not accept it. That he met John P. O'Connor in Elkins some time subsequent, and told him what Patrick O'Connor had said. He replied that he would not pay the remaining nine hundred dollars, or execute the said note, until certain equitable defects in the title to the property had been cured, for which he had brought a suit, or was about to bring a suit, to quiet the said title. That he said to him that he had better pay the amount, and he replied, "No; I have the old man fast, and I propose to hold him." Patrick O'Connor, in his deposition, when asked to state whether or not he ever authorized any one, particularly L. H. Keenan, attorney at law, to collect of the defendant J. P. O'Connor the sum of one thousand dollars as part payment by said O'Connor to him for the said two hundred and five acres of land sold to said J. P. O'Connor, denied that he had given any such authority.

This brings us to the question whether said power of attorney, executed in the circumstances surrounding its execution, authorized said Keenan to collect and purchase money. In the case of *Dyer* v. *Duffy*, 39 W. Va., 149, (19 S. E. 540), (Syl. point 5), this Court held that "one dealing with an agent acting under written power is taken to deal with the power spread out before him, and must inspect it, to see whether the agent's act is authorized by the power." Point 6 of the same case holds that: "One dealing with a special agent does so at his peril. He must be careful to see that the agent's authority covers the act he does." The appellee, in his brief, relies upon the case of *Hutton* v. *Dewing*, 42 W. Va., 691, (26 S. E. 197), where it was held: "If one, with knowledge of a fraud which would relieve him from a contract, goes on to execute it, he thereby confirms it, and cannot get relief against it.

He has but one election to confirm or repudiate the contract, and, if he elects to confirm it, he is finally bound by it." Now, when we take this power of attorney by the four corners and read it, we perceive that Patrick O'Connor, instead of recognizing and approving said conveyance to John P. O'Connor, clearly repudiates it, and authorizes said Keenan to institute and prosecute to final hearing a proper suit, either in said Keenan's name or his own, for the purpose of setting aside and annulling said deed of conveyance, and on the 15th day of August, 1893, this suit was instituted for that purpose in the name of said Patrick O'Connor. Now, if it had been the intention of said Patrick O'Connor that said Keenan should collect this purchase money from J. P. O'Connor, and to ratify and confirm said sale to him, he certainly would not have authorized said suit to set aside and annul said deed of conveyance, nor would he have objected to receiving the one thousand dollars which was paid to Keenan. And, further, it appears from the testimony that there were various matters of account existing between said Patrick and J. P. O'Connor, which must have been intended in said power of attorney, where it speaks of settling all matters of difference between them. The said Patrick having denounced the transaction with J. P. as tainted with fraud, and directed a suit to set it aside, he surely did not intend in the same instrument to go on and ratify and affirm it; and then the testimony shows that Patrick O'Connor, as soon as he was informed of the fact that J. P. O'Connor had paid the one thousand dollars to Keenan, refused to receive it, and repudiated the transaction. Although Keenan may have held an executory contract from Patrick O'Connor for this tract of land, this purchase money one thousand nine hundred dollars, even if the deed had been properly delivered to J. P., and the transaction had been free from fraud, was not coming to Keenan, and he could not receive it, unless specially authorized so to do; and, in my opinion, he was not so authorized by said power of attorney. See Curry v. Hale, 15 W. Va., 867, where it is held that: "Where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes

him to know the limit of the agent's power, and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent." Keenan says in his testimony that, subsequent to the date of his executory contract with Patrick O'Connor, he tried to sell this land to O. C. Womelsdorff, simply as the agent of Patrick O'Connor, thus showing that he utterly ignored the executory contract between himself and Patrick O'Connor. It appears in this case that J. P. O'Connor had obtained this deed from his old uncle, nearly ninety years of age, by representing that he wished to show it to some man in Beverly; that he was to return it in three days, if the purchase money was not paid. But, without waiting one day, he conveyed the land to Womelsdorff, for a consideration nearly double what he was to pay for it. More than a month after he received the deed and conveyed the land to Womelsdorff, becoming aware of the existence of this power of attorney, he paid one thousand dollars to said Keenan, with a view, no doubt, of thereby securing a ratification of the deed he had obtained by fraud. But Patrick O'Connor refused to accept it, and thereby repudiated the act of said Keenan in receiving the same as soon as he was informed of the fact, and in a short time thereafter instituted a suit to set aside said deed on account of the fraudulent manner in which it was obtained. This prompt action on the part of Patrick O'Connor clearly indicates that it was never his intention to ratify said deed, or authorize the collection of said purchase money. That the sum of one thousand dollars was paid to Keenan by J. P. O'Connor with the intention of thereby ratifying the sale by Patrick O'Connor to himself is manifest from the fact that when informed that Patrick would not accept the one thousand dollars, and being told by Keenan he had better pay the other nine hundred dollars, he replied, "No; I have the old man fast, and I propose to hold him."

My conclusion is that the circuit court erred in holding, in the circumstances of this case, that the Roaring Creek Coal & Coke Company was an innocent purchaser of the land in controversy; and said circuit court having (as I think, properly) found that the deed dated the 1st day of June, 1893, from Patrick O'Connor to the defendant J. P.

O'Connor was fraudulent and void as to the plaintiff, said J. P. O'Connor derived no title thereby, and, as a matter of course, could confer none upon O. C. Womelsdorff; and the said J. P. O'Connor, having derived no title to said land, owed no purchase money to Patrick O'Connor; and, as said Patrick O'Connor refused to accept any purchase money from him, he in no manner ratified or validated said deed; and the circuit court erred in holding that said Patrick O'Connor was entitled to any portion of the one thousand dollars paid to said L. H. Keenan, or to any portion of the purchase money remaining unpaid. For these reasons the decree complained of is reversed, with costs, except so far as it holds that the deed dated June 1, 1893, from Patrick O'Connor to J. P. O'Connor, was fraudulent and void as to plaintiff.

### ON REHEARING.

On the 12th of February, 1898, a rehearing was allowed on the motion of the Roaring Creek Coal & Coke Company. On June 8th, 1898, the case was reheard and submitted.

The first point relied on by the petitioner to entitle it to a rehearing of the cause was that the decision had been based on an appeal obtained by the administrator with the will annexed of Patrick O'Connor, deceased, who, it was claimed, had no standing in court to raise the question considered and decided. It was alleged in the bill, and undenied in the answer, that the plaintiff, Patrick O'Connor, was at the time of filing said bill over ninety years of age, and had no home or means of support, his only property being the two hundred and five acre tract mentioned in the bill. At the time the decree was rendered in the circuit court, which was appealed from, said Patrick O'Connor was still in life. After his death the appellant was duly appointed, and gave bond, as his administrator with the will annexed. When John L. Hechmer took upon himself the duties of administrator, he represented an estate with a considerable indebtedness existing against it, and the only source to which he could look for its satisfaction was the proceeds of said land which had been contracted

to be sold by his testator; and, while the circuit court held that the title had been obtained from said testator by fraud, it further held that the land was then in the hands of the Roaring Creek Company, an innocent purchaser, and the estate of Patrick O'Connor was only entitled to the proceeds arising from the transfer of the fradulent title acquired from J. P. O'Connor through O. C. Womelsdorff. Although J. P. O'Connor committed a fraud on his uncle, it is nevertheless true that Patrick O'Connor contracted to sell him the land, and when that contract was vitiated by fraud he contracted to sell it to L. H. Keenan. What effect did this contract have upon the estate? The authorities say that, when land is articled to be sold, it becomes personalty. On this question Story's Equity Jurisprudence (section 1212) says: "Another class of cases illustrating the doctrine of implied trusts is that which embraces what is commonly called the 'equitable conversion of property.' By this is meant an implied or equitable change of property from real to personal, or from personal to real, so that each is considered transferable, transmissible, and descendible according to its new character, as it arrises out of the contracts or other acts and intentions of the parties. This change is a mere consequence of the common doctrine of courts of equity, that, where things are agreed to be done, they are to be treated for many purposes as if they were actually done. Thus, as we have already had occasion to consider, where a contract is made for the sale of land, the vendor is, in equity, immediately deemed a trustee for the vendee of the real estate, and the vendee is deemed a trustee for the vendor of the purchase money. Under such circumstances, the vendee is treated as the owner of the land, and it is devisable and decendable as his real estate. On the other hand, the money is treated as personal estate of the vendor, and is subject to like modes of disposition by him as other personalty, and is distributable in the same manner on his death. So, land articled to be sold and turned into money is reputed money, and money articled or bequeathed to be invested is ordinarily deemed to be land." Yet the Roaring Creek Coal & Coke Company, which claims to have been an innocent purchaser indirectly from Patrick O'Connor, in its petition for a

rehearing, insists that the proceeds of this tract of land are still realty, and for that reason the administrator had no right to apply for or obtain this appeal.   When the administrator assumed his trust, he took the estate as he then found it.   Debts existing against it, as appears from the testimony and the will, if we may look to it for that purpose, and the proceeds of this land were all he had to look to for their liquidation.   Where the personal estate of a decedent is insufficient for the payment of his debts, Code, c. 86, s. 7, allows the administrator to prosecute a suit in equity to subject the the real estate to the payment thereof.   When this administrator looked to the records, he found a decree of the circuit court of Randolph County, holding that the deed executed by Patrick O'Connor to the defendant, dated June 1, 1893, was fraudulent and void as to his testator, Patrick O'Connor, but that the Roaring Creek Coal & Coke Company was an innocent purchaser for value without notice, and the plaintiff was not entitled to have the deeds from himself to J. P. O'Connor, and from J. P. O'Connor to O. C. Womelsdorff and from Womelsdorff to said coal and coke company, set aside, and the title and possession of said land restored to him, but that said company was entitled to have its title and possession through said deeds confirmed to it.   I have endeavored, in the opinion above quoted, to show that said coal and coke company was a *pendente lite* purchaser, and for that reason bound by the result of the pending litigation, and for the same reason could not be properly held an innocent purchaser without notice; and I refer to and adopt said former opinion, so far as it discusses said question, and the conclusion then reached, as well.   Said administrator then found said land in the possession of said coal and coke company under a fraudulent conveyance confirmed by an erroneous decree.   What was he to do?   A review of the facts in the light of law convinced him at once that the legal title was not in said company.   The decree before him held that the deed executed by Patrick O'Connor to the defendant J. P. O'Connor was fraudulent and void as to the plaintiff,   As a consequence, the deed from J. P. O'Connor to Womelsdorff was void, as J. P. O'Connor could not convey the title he did not possess.

Counsel for said company in their petition for rehearing, and argument for the support of the same contend that the administrator with the will annexed has no standing to prosecute this appeal in his own name to set aside deeds to real estate, and reinvest the title in the heirs of the devisee of the defendant.     Now, in the first place, no title has ever vested in said coal and coke company, for the reason that it was manifestly a *pendente lite* purchaser, and the title of its vendor has been held to be void as a result of the litigation pending at the time it became a purchaser.     Now, if this appeal should be successfully prosecuted by the administrator, the result would only be to remove the cloud from the title to the land in controversy, by holding the title claimed by said company to be void as a *pendente lite* purchaser, the circuit court, as I have said, having held the title of John P. O'Connor fraudulent and void; and for that reason he could confer no valid title upon Womelsdorff, under whom the said company claims.     That would leave the land articled to be sold to L. H. Keenan under the agreement made between Patrick O'Connor and said Keenan dated June 23, 1893, which agreement was recorded on the next day, for a consideration of ten dollars per acre.

Attention is called in the brief of counsel for said company on a rehearing to an error committed in stating a fact, to wit, as to said Keenan endeavoring to sell said land to O. C. Womelsdorff after the date of the above mentioned agreement.     This was an error committed by inadvertence, and the inference drawn from it was also erroneous; but it is immaterial, and does not affect the case.     This land was articled to be sold, and for that reason must be regarded as personalty, and the administrator surely has a right to clear away these false and fraudulent titles which incumber the estate which it is his duty to administer. His success in this case will not have the effect of restoring the property to the heirs at law, but will give it to the personal representative to be administered.     I am therefore of opinion that the administrator has the right to prosecute this appeal.

Having expressed my views as to said company being a *pendente lite* purchaser in the opinion above quoted, I adopt said opinion, except so far as herein corrected, and on this

rehearing hold that said Roaring Creek Coal & Coke Company was a *pendente lite* purchaser, and bound by the result of the litigation then pending between said parties in said suit, and was not, therefore, an innocent purchaser. The decree complained of must therefore be reversed, and the cause remanded, with costs.

BRANNON, PRESIDENT, (*dissenting*):

I think the appeal ought to be dismissed because the administrator cannot maintain it. The heirs should have sued it out. When the deeds are annulled, they get back title, not the administrator. He is the administrator with will annexed, but the bill does not show that it vests any title to land in the administrator. The will is produced only with the petition for rehearing, and was not a part of the record, but it vests no estate in land in the administrator. The bill was filed, not to enforce purchase money, but, repudiating the sale and purchase money, it sought only to annul the deed and reclaim the land. The appeal seeks to reverse the decree because it did not give land by canceling the deed, and because it gave O'Connor money. The very feature of its giving purchase money is repudiated, and assigned as error. I, therefore, cannot see how the appeal can be sustained (as it is in the opinion prepared by JUDGE ENGLISH) on the idea of a trust arising from the sale in behalf of O'Connor for the purchase money, when that sale is alleged to be void for fraud, and the plaintiff does not go for purchase money, but repudiates it, and goes for land only. An administrator cannot prosecute an appeal from a judgment in a case involving title to land. *Vail* v. *Lindsay*, 67 Ind , 528.

I doubt, too, on another point. The power given by O'Connor to Keenan contemplated either a suit to cancel the deed, or a compromise with John O'Connor, as Keenan might choose, and not solely by a suit. If so, his arrangement with John was a confirmation of the deed, as it was an election to take the purchase money and condone the fraud. *Hutton* v. *Dewing*, 42 W. Va., 691, (26 S. E. 197). Again, if Patrick O'Connor made a sale of the land to Keenan, as the power says he did, why could not Keenan, as

owner of the land, take the purchase money under the deed to John and thus confirm that deed? Patrick had gotten, or would get, pay for the land from Keenan, under the sale to him; and Keenan would be entitled to sue for the land, or take the purchase money from John in lieu of it. I have not examined this feature of the case minutely, but it so comes to my mind.

*Reversed.*