# CHARLESTON.

FIRST NATIONAL BANK OF WEBSTER SPRINGS *et al. v.* JOHN T.
McGRAW *ea al.*
AMERICAN AUDIT CO. *et al. v.* SAME.
UNION TRUST & DEPOSIT CO. *et al. v.* SAME.

Submitted November 25, 1919.   Decided December 5, 1919.

1.   JUDGMENT—*Necessary   Parties—Suit   to   Enforce   Judgment Liens.*

In a suit to enforce judgment liens a person who has conveyed to the judgment debtor a part of the land sought to be subjected, subject to a vendors lien in favor of a third person, assumed by the grantee as part of the consideration, is not a necessary party; nor does the omission of persons whose reputed equities in the land are indicated only by uncertain and indefinite evidence, constitute ground of reversal of a decree os sale in such a suit.   (p. 305).

2.   SAME.

Persons holding, as trustees, the legal title to land on which there are judgment liens, or having apparent equitable title thereto, or holding, by assignment from the judgment debtor, the rents arising from a lease on the land, executed after liens attached thereto, are necessary parties to a suit for enforcement of the liens, and a decree of sale of the land, made in their absence, is erroneous and reversible.   (p. 305).

3.   SAME—*Mortgagee   Necessary   Party   to   Suit   to   Enforce   Judgment Liens.*

A mortgagee of real estate acquired by the mortgagor after the date of the mortgage does not hold the legal title to the

85 W.. Va.

property, but he has an equitable title or interest which makes him a necessary party to a suit to enforce prior judgment liens on the property so mortgaged.   (p. 305).

4.  ACTION—*Consolidation of Suits in Equity Does Not Affect Lack of Necessary Parties.*

Consolidation of suits in equity does not change the rules of equity pleading, nor the rights of the parties, wherefore lack of necessary parties to one suit is not ordinarily cured by consolidation with it of another suit to which the omitted persons are parties.   (p. 309).

5.  JUDGMENT—*Conclusiveness of Recital as to Process in Decree.*

A recital in a decree to the effect that a bill was duly matured and process thereon duly executed on all of the defendants, not absolutely and irreconcilably contradicted by the record, is conclusive of all questions as to service of process pertaining to that bill for the purposes of the suit in which such decree was entered.   (p. 310).

6.  EQUITY—*Recommittal of Report of Commissioner Without Disposition of Exceptions.*

It is not error to recommit a report of a commissioner in chancery, to which there are exceptions, without previous disposition of the exceptions.   (p. 310).

7.  JUSTICES OF THE PEACE—*Principal and Agent—Judgment on Defective Process Presumed Valid.*

Though an agent has no implied authority to accept service of process against his principal, a judgment of a justice of the peace founded upon such an acceptance of service, is sustained, in the absence of allegation and proof of lack of authority in the agent to accept service, by a rebuttable presumption of validity.   (p. 310).

8.  EQUITY—*Insufficient Exceptions to Report of Commissioners in Chancery.*

A commissioner's report made in a suit to enforce judgment liens and purporting to set forth all of the real estate of the debtor and to show the amount of the rents, issues and profits thereof, cannot be overthrown as to such matters, by an exception based upon indefinite testimony and claims as to ownership of additional property, disclosing no legal title, nor any facts clearly importing equitable title, to additional land, in the debtor.   (p. 310).

9.   SAME—*Objection by Judgment Debtor to Report of Commis-sioners in Chancery.*

The judgment debtor in a suit to enforce judgment liens cannot complain of the inclusion of lands not owned by him, in the report of the commissioner and the decree of sale, for it is not prejudicial to him.   (p. 313).

10.   JUDGMENT—*Decree—Pleadings—Description of Lands.*

In such a suit, it is not necessary that either the commissioner's report or the decree of sale minutely describe the lands, as by quantity and location or by metes and bounds, if the pleadings and exhibits contain descriptive matter sufficient to identify them.   (p. 313).

11.   SAME—*Duty to Proceed Against Co-debtors of Joint Judgment Debtor in Suit to Enforce Judgment Lien.*

Though the co-debtors of a joint judgment debtor should be made parties to a suit to enforce the lien of the judgment against his lands, the creditor is not bound to proceed against the lands of such co-debtors in that suit, nor contemporaneously to prosecute other suits for subjection of their lands to satisfaction of the lien of his judgment.   (p. 313).

12.   PRINCIPAL AND SURETY—*Enforcement of Joint Judgment Against Co-debtor as Principal.*

If the joint judgment debtor whose lands are so proceeded against is the surety of his co-debtor, he may assert his equity against his principal and obtain a decree first subjecting his principal's lands to sale to satisfy the judgment, by way of exoneration, provided both parties and their lands are before the court, in one or more suits, and such procedure will not subject the judgment creditor to undue delay; but the latter cannot be required to await the creation of such conditions.   (p. 313).

13.   ACTION—*Consolidation of Suits to Enforce Judgment Liens Delaying Entry of Decrees.*

Nor can such a debtor require a consolidation of two or more judgment lien suits pending in the same court, in some of which the lands of the principal debtors and co-debtors are proceeded against, under such conditions and at such stages of the proceedings against his lands, as will delay the entry of decrees against him in favor of judgment creditors as to whose debts he is not entitled to a decree of exoneration against a surety or co-debtor, either because the relation does not exist or the conditions warranting such a decree do not obtain.   (p. 313).

'85 W. Va.

14. JUDGMENT—*Stay by Cross Bill of Suit to Enforce Judgment Liens.*

Nor, after the liens have been ascertained and reported in the suit against his lands and the cause is practically ready for submission and decree, can he stay the proceedings by means of a cross-bill for enforcement of his equities against his co-debtors. It comes too late and may properly be rejected by the court. (p. 316).

15. SAME—*Personal Decree Against Judgment Debtor in Suit to Enforce Judgment Liens.*

In a suit to subject the lands of a joint judgment debtor to sale to satisfy the lien of the judgment, it is not error to enter a personal decree against him alone. (p. 317).

16. SAME—*Enforcement of Judgment Liens.*

In such a suit, judgments enjoined only to protect the property of a third person from sale to satisfy them, may be proved and allowed, they being wholly unrestrained as to the debtor whose lands are proceeded against. (p. 317).

17. SAME—*Enforcement of Lien—Inclusion of Judgment—Suit to Enforce Judgment.*

It is not error to refuse, in such a suit, to include a judgment not set up or claimed in it by the judgment creditor. (p. 317).

18. SAME—*Enforcement of Judgment Lien—Personal Decrees Against Alienees—Judgment Debtor.*

The debtor in such suit cannot complain of personal decrees against alienees of lands he has sold, for the amounts of judgments against him, nor of failure of the decree of sale to require his remaining lands to be sold first. (p. 317).

19. EVIDENCE—*Bill to Enforce Judgment Lien Taken as Confessed as to Judgment Debtor's Grantee.*

If, in such case, the bill seeks to set aside a conveyance of property, made by the judgment debtor, before any of the judgments were recovered, on the grounds of fraud and lack of consideration, after the right to attack it upon the latter ground has ceased by limitation, and the bill is taken for confessed as to the grantee, but is opposed by an answer of the grantor, squarely and absolutely denying the charge of fraud and also the charge of an absolute conveyance without consideration, but averring the conveyance in question was made upon a trust in his own favor and claiming the equitable title to the land, and there is no proof of the fraud charged, such admission of equitable title does not bind the grantee and can-

not be made the basis of a decree subjecting the land to judgment liens and enforcing them. (p. 319).

20. FRAUDULENT CONVEYANCES—*Amendment of Bill—Suit to Enforce Judgment Liens Against Land Conveyed to Enforce Trust in Grantor.*

But the different cause of action and ground of relief, so admitted, constitutes matter for an amendment of the bill, setting up the alleged trust against both the grantor and grantee; and, although it cannot be established otherwise than by a collateral agreement in writing or a written declaration of trust, or the equivalent thereof, if it is sufficiently denied, the benefit of the statute of frauds claimed and the rule inhibiting admission of oral evidence to contradict, alter or vary a written instrument invoked, provided the attendant facts do not constitute an independent equity, yet it may be enforced by a decree, if no defense is interposed or the grantee answers admitting the trust alleged. (p. 319).

21. TRUSTS—*Judicial Enforcement of Parol Trust.*

Judicial enforcement of a parol trust under the absolute deed of the claimant thereof and against its terms, is not inhibited by the common law, any statute, or rule of evidence, when such trust is judicially admitted. It passes the title by a deed in execution of the decree, agreeably to the requirement of sec. 1 of ch. 71 of the Code. (p. 319).

22. LIS PENDENS—*Territorial Scope.*

The territorial scope of the rule *lis pendens* is coextensive with the jurisdiction of the court in which the suit is pending. (p. 320).

23. SAME—*Jurisdiction—Description of Property.*

Actual, not merely potential, jurisdiction of the court is essential to the operation of the rule *lis pendens;* wherefore, to make it effective, the *res litigiosa* must be established in some court, by attachment of its jurisdiction to the person, the property and the right or claim asserted against it, and the property and right or claim asserted must be sufficiently described in the pleadings or otherwise in the cause. (*p.* 320).

24. SAME—*New Cause of Action—Amendment.*

If, after the bill has been filed, a new subject or a new cause of action is introduced by amendment, there is no *lis pendens* as to such new subject or cause of action prior to the date of the amendemnt, and a purchase of the property so brought in or charged, before the date of the amendment, is not subject to the rule. (p. 320).

25. SAME—*Scope of Notice on Bill by One Judgment Creditor Making all Others Parties Defendant.*

A bill filed by one judgment creditor and making all others parties defendant thereto, does not create a *lis pendens* as to any judgment other than that of the plaintiff, but, on it, there is a *lis pendens* as to the judgment of each defendant and each judgment creditor not made a formal party, from and after the date of his assertion thereof by his answer, petition or proof before the commissioner to whom the cause is referred.  (p. 320).

26. SAME—*Lands of Judgment Debtor Situated in Another County.*

If such a bill proceeds only against the lands of the judgment debtor situate in the county in which it is filed, it alone does not create a *lis pendens* as to lands of the judgment debtor, situate in any other county.  (p. 320).

27. JUDGMENT—*Priority of Judgment Lien Over a Lease of the Land.*

Docketed judgments constituting liens on lands, at the date of recordation of a lease thereon, take precedence over the lease and bind the land, as if there were no lease on it; but other judgments either antecedently or subsequently recovered, bind the land subject to the lease, the lease taking precedence over them, in the absence of procedure applying the rule *lis pendens.*  (p. 320).

28. EQUITY—*Answer of Grantor as Availing Grantee in a Bill to Avoid Deed.*

The answer of the grantor in a deed to a bill seeking avoidance thereof on the grounds of fraud and lack of consideration, denying the allegations of such grounds, avails the grantee and requires the plaintiff to prove them, if he would prevail.  (p. 324).

(MILLER, PRESIDENT, absent).

Appeal from Circuit Court, Webster County.

Separate suits by the First National Bank of Webster Springs and others, by American Audit Company and others, and by Union Trust & Deposit Company and others, for the enforcement of judgment liens against John T. McGraw and others.  Cases consolidated for trial, and judgment for plaintiffs in each suit, and John T. McGraw appeals.

*Reversed and remanded.*

Counsel for Appellees:

*Samuel V. Woods,* for Mozelle Dorr, Admrx C. P. Dorr, deceased.

*Harry Friedman,* for American Audit Company, M. Solomon Fly Screen Co., Beau-Site Co., Emanuel Heco etc., Partners, Harry Friedman, Trustee, T . W. Hostings, A. W. Smith, Brentano's Hutzler's Company, Swift & Co., and Willison Audit Company.

*A. W. Burdette,* for Grafton Banking and Trust Co., Pugh & Beavers Grocery Co., J. W. Holt, Trustee, C. J. Tucker etc., partners, and German National Bank.

*G. W. Ford,* for The City of Grafton and G. W. Ford, creditors.

*S. H. Sommerville,* for Brunswick-Balke Collender Co.

*J. H. S. Barlow,* for First National Bank of Friendsville, Maryland, and J. H. S. Barlow, judgment creditors.

*Lynn Brannon* and *L. L. Dyer,* for Edwards & Edwards Insurance Agency.

*W. S. Wysong,* for Tracy and Hines, D. H. Hamrick, Cherry Woodzell and others, judgment creditors.

*Morton & Wooddell,* for First National Bank of Webster Springs, J. B. Skidmore, Receiver etc., Croft Stanard Company, Joseph Fuccy, Holly Lumber Company, Abney-Barnes Co., R. H. Hamrick, Gae Morgan, Charles Woodzell, Commonwealth Trust Co., G. F. Hamrick, S. R. Woodzell, M. J. Rutherford, G. A. McCourt, M. J. Wooddell, D. H. Hamrick, Cherry Woodzell.

*Ira E. Robinson, J. M. Hoover* and *Hall Bros.,* for appellant.

POFFENBARGER, JUDGE:

The sole appellant in these three suits brought in three different counties of the state for the enforcement of numerous judgment liens, and afterwards consolidated, is the judgment debtor. The properties proceeded against are numerous, varied in character, valuable and widely scattered through several counties, and the liens adjudicated and fixed by the decree complained of, amount in the aggregate to a sum not far from $1,000,000.00, it is said. One of the three suits was instituted in Webster County, one in Taylor and the third in Jefferson, and the last two were transferred to Webster County, and then consolidated with the suit pending in that county. Some of the appellant's

twenty-six assignments of error may be susceptible of group treatment, since they depend upon the same principles.

The first assignment of error, assailing the decree on the ground of lack of necessary parties, if found to have been well taken, will be fatal, for jurisdiction of all necessary parties is essential to the validity of a decree in any cause.

Leopold E. Mambourg was not a necessary party, though he might have been a proper party, if the plaintiff had brought him into the cause. The record shows nothing concerning him, except that he conveyed to the judgment debtor a certain piece of property subject to a vendor's lien in favor of his grantor, which appears by the deed to have been assumed by the grantee therein, the judgment debtor in these causes. That lien was reserved by one Linnie Jarrett against whom there is no decree, although the property is decreed to be sold as that of the judgment debtor. Of course, Mambourg was interested in the payment of his outstanding note in favor of Linnie Jarrett, but he had no interest in the property nor any lien upon it, and his absence as a party does not in any manner affect its status.

From the testimony of a witness, it appears that the board of education of some district in Pocahontas County has a deed for certain lots in the town of Durbin and has erected a school building on them, but it does not appear at what date the lots were purchased or conveyed to it. The same witness testifies that the M. E. Church has built its parsonage on a lot in said town of Durbin, reported by the commissioner to be the property of the judgment debtor and decreed to be sold. This evidence is insufficient to prove necessity for making the church and board of education parties. It does not give the time or circumstances of the purchase or the prices, nor show payment of any purchase money. For all that appears, they may be *pendente lite* purchasers whom it was not necessary to bring in as parties. *Harmon* v. *Byram*, 11 W. Va. 511; *Lynch* v. *Andrews*, 25 W. Va. 751; *Wick* v. *Dawson*, 48 W. Va. 469; *Goddin* v. *Vaughan*, 14 Gratt. 102; *Price* v. *Thrash*, 30 Gratt. 515.

Rose McGraw, holding an assignment of the rents and profits arising from a mining lease on one of the tracts of land, executed after certain judgments asserted in the suits had been docketed in the county in which the land lies, by virtue of a

written contract, should have been made a party. The liens of those judgments are superior to the right conferred by the lease' on which her right rests, and enforcement thereof would extinguish both of these rights. Hence, she is interested in the litigation, and entitled to be heard. If she can show those particular liens have been satisfied, or save her rents by causing other lands to be first sold, she has clear right to do so. It suffices that she has the direct interest here noted, whether she can save her rents or not.

As to Kenna Rexroad, purchaser of certain lots in the Town of Durbin, Pocahontas County, from the judgment debtor, after it had become subject to some of the liens, by verbal contract partly performed in such manner and to such an extent as to make it enforcible, notwithstanding the statute of frauds, the assignment is technically good. He brought his interest to the attention of the court by a petition filed in the cause, and it was remanded to rules for process. But the bill was not amended, wherefore he was not strictly a party, although the decree charged his lots only with judgments docketed at the date of his purchase. *Freeman* v. *Egnor,* 72 W. Va., 830. His lots were charged with such liens thereon as were docketed at the date of the purchase and included in the decree of sale. N. B. Arbogast and Howard Bird occupied like positions, except in one respect. Their lots were purchased before any of the liens attached to them. The former filed a petition setting up his claim and praying to be made a party to the suit, but the bill was not amended as to him and his lots were not reported by the commissioner, as being liable to sale, nor included in the decree. Bird filed no petition, and his lot was included in the commissioner's report and the decree of sale, although his apparent purchase and equitable title were disclosed by a deposition. They were both necessary parties. *Preston* v *Ashton's Adm'r.* 85 Va., 104. In Arbogast's case, there was a decision against McGraw, and, in the other, one in his favor, founded upon no proper pleadings in the cause. The bill should have made both Arbogast and Bird parties, if there was purpose to proceed against their lots, and then there might have been cross-pleadings between them and McGraw. Arbogast filed his petition, but the bill was not amended so as to make him a party.

So far as the record discloses Bird's lot was decreed to sale without notice. He was not personally brought in either regularly or irregularly. As will be shown, none of these parties were *pendente lite* purchasers.

Although John T. McGraw is the equitable owner of seven-eighths of Lots Nos. 3 and 4 of the Bennett Addition, which are decreed to be sold, the legal title thereto stands in the name of Jake Fisher, Trustee, who was not made a party to the suit. Fisher was made a party in his individual capacity, but not as trustee. His presence as trustee was necessary. *Turk* v. *Skyles,* 38 W. Va., 404. Whether, in the absence of other errors, the decree could be modified or corrected in some way, so as to avoid reversal for these defects, it is unnecessary to inquire, for it contains a more damaging and fatal one of the same kind.

Certain areas of coal containing in the aggregate 4,469.9 acres constitute part of the property decreed to be sold, on the theory of equitable title thereto in McGraw, notwithstanding his conveyance thereof to the West Virginia Midland Railroad Co., by a deed dated, Aug. 14, 1908. It is urged, on behalf of the appellant, that the legal title to these tracts of coal passed to the Morton Trust Company of New York, a foreign corporation, by virtue of a deed of trust or mortgage executed to it by the West Virginia Midland Railroad Company, April 2, 1906, conveying all of the property thereafter to be acquired by it, to the Morton Trust Company, Trustee, to be held by it in trust, to secure bonds of the Railroad Company, amounting to $1,000,-000,00. The language of the clause pertaining to after-acquired property reads as follows: "Including as well all property or things whatsoever of any such nature or description as above mentioned, belonging or pertaining to, or for use in connection with the said railroad and its branches above described, which shall be hereafter acquired or possessed by the party of the first part for or in connection with the said railroad or branches between said termini." In resistance of the assault upon the decree predicated upon the absence of the Morton Trust Company, Trustee, it is urged, (1), that, by the mortgage or deed of trust, the grantee did not obtain the legal title to the coal; and (2), that the coal areas in question are not property

of such character as was contemplated by the mortgage or deed of trust, and, therefore, are not included. No title to this property of which a court of law would take cognizance passed by the mortgage, but courts of equity give effect to mortgages of. after-acquired real property. *Dcswell* v. *Buchanan,* 3 Leigh 365; *Bear Lake etc. Waterworks Co.* v. *Garland,* 164 United States 15; Jones, Mortgages 7th Ed. sec. 157. Though the Morton Trust Co. did not acquire the legal title to the coal, for the reason that it was after-acquired property, it may have acquired an equitable interest therein or title thereto, as representative of the bond holders, which precluded its omission from the proceeding to enforce liens against the lands. The mortgage clothed the trustee with very full representative power and made it an interested party, if the instrument includes the coal land in question. *Billmyer Lumber Co.* v. *Merchants Coal Co.,* 66 W. Va., 696. Whether it does or not, is a question of interpretation and construction, in which the trustee is obviously interested. In connection with the clause above quoted relating to after-acquired property, a preceding clause is to be read and considered, as having some bearing upon its interpretation. After having specifically mentioned many kinds of property possessed by the railroad company at the date of the mortgage, this clause proceeds as follows: "And all things or property of any kind, nature or description whatsoever, real, personal or mixed, including coal land and all mineral rights, belonging to or used or designed for use or in connection with said railroad and branches." These terms are descriptive of the property actually conveyed. The clause relating to after-acquired property covers "All property or things whatsoever of any such nature or description as above mentioned." Interpretation of the language of the mortgage respecting after-acquired property, in the absence of the trustee, in such manner as to bind it, is manifestly impossible. It is equally obvious, however, that the terms of the instrument are broad enough to raise a question of interpretation in which the trustee is vitally interested. Whether the property in question is included may depend also upon its location, its relation to the railroad and the use made of it, none of which are developed in the record. The limitation upon the quantity of land a railroad company may take or

acquire, imposed by sec. 6 of ch. 52 of the Code, is also invoked in resistance of the theory of the appellant, the area of the coal in question being far in excess of the amount limited by the statute.    The nature of the limitation and the extent of its operation are questions upon which the trustee is likewise entitled to be heard.    It may be that the State only can complain of these excessive holdings, and that an enterprising citizen cannot come along and claim and take title to them, directly or indirectly, because the railroad company had no right to acquire or hold them.    From what has been said, it is clear that the Morton Trust Company should have been made a party as trustee, because it apparently holds in trust equitable title to the coal proceeded against, not legal title.

It was made a party in its own right, as a judgment creditor, but not as trustee, unless consolidation with these three suits, of another instituted by Margaret G. Hamrick against John T. McGraw, for enforcement of a vendors lien, in which it was a party as trustee, may be deemed to have made it a party, as such, to these causes.    It is urged that it did not because the Hamrick suit was afterwards partially or wholly severed from the others.    Since the consolidation did not have the effect claimed, the character of the severance is immaterial.    Consolidation does not change the rules of equity pleading, nor the rights of the parties, which must still turn on the pleadings, proofs and proceedings in their respective suits.    The parties in one suit do not become parties in the other, by consolidation, and a decree in one is not a decree in the other unless so directed.    *Toledo, etc. Railroad* v. *Continental Trust Co.,* 95 Fed. Rep. 497; *Ogburn* v. *Dunlap,* 9 Lea (Tenn.) 162; *Masson* v. *Anderson,* 3 Baxter (Tenn.) 290; *Brevard* v. *Summer,* 2 Heisk, (Tenn.) 97.    The ruling in *Shenadoah Valley National Bank* v. *Bates,* 20 W. Va. 210, is not inconsistent with the general rule, enunciated by the authorities just cited.    In that case, the bank had judgments for the same debt against four persons.    In a suit against the administrator and heirs of the maker of the note on which its judgment was founded, for enforcement of the lien, it had appeared and proved its judgment against the heirs of the maker.    It had also proved it, or was entitled to prove it, against two of the endorsers of the note.    Fearing the real estate of the

maker and the two endorsers against whom proceedings were pending would not be sufficient to pay its debt, it brought another suit against Bates who was also an endorser and judgment debtor, but did not make the heirs or the deceased maker of the note, parties to that suit.   The court held that, in as much as the plaintiff's debt was already established against the heirs of the maker, in one of the pending suits, and the suits could be consolidated, it was not necessary to make them parties to the last suit brought, the one against Bates.   This effect of consolidation was not regarded as a result of operation of the general rule, for the court said it was justified "By the rules of chancery practice in special cases where the facts are such as they" were in that case.   The plaintiff's judgment was the same in all of the causes and it sufficed, in the opinion of the court, to establish it once against the heirs.   The demurrer was sustained, however, for omission of other parties, judgment creditors whose liens were proved in the cause.

The First National Bank of Webster Springs filed a second amended and supplemental bill, at April Rules 1916, process on which issued.   One of the objects of that bill was to bring in Francis P. Garvan to whom John T. McGraw, by a deed dated, March. 18, 1914, conveyed various tracts of land in Webster County, containing in the aggregate 10,175 acres, and, by a deed dated, April 3, 1915, an undivided one-half interest in various tracts of coal and other lands in Greenbrier, Nicholas, Pocahontas and Webster Counties, containing in the aggregate 13,366 acres.   In addition to the allegations respecting the conveyances to Garvan, this bill contains others setting up the recovery by the plaintiff and others, of numerous judgments against McGraw.   The process was served on Garvan, but it does not appear from the record, whether it was served on any of the other defendants or not.   The appellant made numerous appearances in the cause after the filing of that bill.   A decree entered, May 25, 1916, recites that the second amended and supplemental bill of the First National Bank of Webster Springs, had been duly matured and set for hearing, and that the cause of the *First National Bank of Webster Springs* v. *McGraw and others* had been duly matured as to the original and supplemental bills and "process duly executed on all the defendants thereto."   This

amounted to a judicial ascertainment of service of process on all the parties defendant. *Central, etc. Telegraph Co.* v. *Parkersburg, etc., Railway Co.,* 76 W. Va. 120. Hence, the second assignment of error is not well taken.

The causes were first referred to Special Commissioner James Woodzell, to whose report certain exceptions were filed; then re-committed to Special Commissioner Ernest V. Morton, without passing on the exceptions to the report of Commissioner Woodzell; and then recommitted to Commissioner Ernest V. Morton, without disposition of certain exceptions filed to his first report. Morton's second report, with a supplement thereto, constitutes the final report in the cause, and covers and includes all the matters dealt with and reported upon in the previous reports. Its findings are the basis of the decree. Assignments of error are predicated upon the failure of the court, before recommitting the causes, to dispose of the exceptions to the reports then filed. These contentions are adversely disposed of in specific terms in *Hooper* v. *Hooper,* 29 W. Va. 276, 283. To the same effect, see *Findley* v. *Findley,* 42 W. Va. 372.

A judgment was recovered by H. C. Duffield against the West Virginia Midland Railroad Co., John T. McGraw and others, Dec. 5, 1910, assigned by Duffield to Joseph Fuccy, March 4, 1911, and attempted to be released by Duffield, June 8, 1911, was reported by the commissioner as a valid lien and carried into the decree. The appellant excepted to the report of the commissioner as to this item and the court overruled his exception. After having assigned the judgment, Duffield had no further control over it and could not execute a valid release. *Clarke* v. *Hogeman,* 13 W. Va. 718; *Fleshman* v. *Hoylman,* 27 W. Va. 728, 738. Hence, the court did not err in overruling the exception.

The commissioner reported as valid liens, certain small judgments recovered against the appellant in justice's courts, upon process not executed upon him personally though directed to be served upon him, but in respect of which service was accepted by his agent, one J. W. Wooddell. There is no presumption of authority in an agent to accept service of process for his principal, but there is a presumption of the validity of a judgment rendered by an inferior court. For all that appears here, the

agent may have been authorized to accept service and that fact may have been disclosed to the justice. This presumption of validity is not a conclusive one, in the case of a judgment of an inferior court. It is rebuttable, but, if the judgment is not attacked, nor its validity questioned, the presumption prevails and sustains the judgment. *Leachman* v. *Young,* 64 W. Va. 652; *State* v. *Citizens Trust & Guaranty Co.,* 72 W. Va. 181; *Horner* v. *Huffman,* 52 W. Va. 40; *Bumgarner* v. *Bank,* 70 W. Va. 787. The validity of the judgment is not assailed by any pleading in the cause. The appellant endeavored to impeach it upon the sole ground that all jurisdictional facts do not appear upon its face, and by a mere exception to the report of the commissioner. This assignment of error is not well taken.

Two or three assignments of error are predicated upon the theory that the commissioner did not ascertain and report all of the real estate of the judgment debtor and take it all into consideration, in determining the amount of the rents and profits and their sufficiency or insufficiency, within five years, to pay off his indebtedness. Only two pieces of property are referred to as having been omitted, one of which is the Willard Hotel in Grafton and the other a lot in the City of Grafton, described as being Lot No. 2 on Latrobe Street. There is in the record some indefinite and unsatisfactory evidence of a purchase of said Lot No. 2 by the appellant, but it is admitted that he has no record title thereto. The witness says his understanding is that one of the banks holds a deed to the appellent, in escrow, awaiting payment of a balance due on purchase money. There is no proof in the record that the appellant owns the Willard Hotel. In an exception to the commissioner's report, he claims to have purchased it at a judicial sale, but he produces no evidence of his purchase. He was repeatedly called upon to disclose all of his real estate, before the commissioner made his report, and he did not then claim ownership of said Lot No. 2 or the Willard Hotel. This showing is wholly insufficient to prove omission of any real estate owned by the appellant or failure to consider all of it, in ascertaining the rents, issues and profits. Appellant does not claim the Willard Hotel property has been paid for, and the rents, issues and profits of that property might not be sufficient to pay the debt for its purchase money, within

five years.   He may owe all of the purchase money of said
Lot No. 2.

If the commissioner erred in reporting some of the property
of the Rosemont Coal Company, as being the property of the
appellant, neither he nor the Rosemont Coal Company is pre-
judiced by the finding.   If some of his debts are paid out of
the proceeds of the property of the Rosemont Coal Company,
he will not be injured thereby, and, therefore, cannot complain.
On the other hand, the Rosemont Coal Company, cannot be
hurt, because the decree as to it, is void, it being no party to
the suit.   Hence, the court did not err in overruling the tenth
and eleventh exceptions to the commissioner's final report.

The eleventh and twelfth assignments of error need not be
considered, for they pertain to the mortgage executed to the
Morton Trust Company, which is not a party in the capacity of
trustee.   Presumptively, it will set up any claim it may have
under the mortgage, after it shall have been brought into these
suits.

The assignments of error predicated upon alleged uncer-
tainty of description of the lands ordered to be sold, found in
the commissioner's report and the decree, are not well taken.
Sufficient descriptive terms are found in the pleadings and
exhibits, and the commissioners appointed to make the sales can
properly advertise and sell the lands and report their sales.
The decree need not describe the lands minutely, giving quan-
tity, metes and bounds and the like.   *Burger* v. *Buckland et als.,*
28 Gratt. 850.

Many of the judgments involved were jointly obtained against
John T. McGraw and one or more other persons, and, in num-
erous instances, he claims to be liable only as surety of his co-
debtors.   Some of the judgments set up in these causes constitute
the bases of other suits not consolidated with these, but prose-
cuted for enforcement of the liens thereof on the lands of his
co-debtors.   Those particularly mentioned are: *First National
Bank of Monongah* v. *Point Mountain Coal Co. et al.*; *Ash-
craft, Adm'r.* v. *Back Fork Coal Co. et al.; First National Bank
of Fairmont* v. *Webster Springs and Pickens Railroad Co.;* and
*Webster Springs Hotel Co.* v. *G. F. Hamrick et al.*  It is urged
that the court erred in its refusal or failure to order consolida-

tion of all of those suits, except, perhaps, the one last named with these suits, to the end that the appellant's land might be exonerated to the extent of payment and satisfaction out of proceeds of sales of lands of his co-debtors or principals in the debts involved in such other suits and that, in all other instances of joint indebtedness and principal and surety, the lands of his co-debtors should have been proceeded against in these suits.

No authority cited or found goes so far as to require the creditor of joint judgment debtors separately owning real estate on which the judgment is a lien, to prosecute a single judgment lien suit against the lands of both or all of the debtors, or separate suits contemporaneously against them for enforcement of the lien. The authorities relied upon in the brief filed for appellant impliedly hold the contrary. They say all of the co-debtors must be made parties to a suit to enforce the lien aginst the land of one of them, because they are parties to the judgment, liable for it and have right to insist upon its proper rank and priority in the adjustment of the liens. *Shenandoah etc. Bank* v. *Bates,* 20 W. Va. 210; *Norris Coldwell & Co.* v. *Bean,* 17 W. Va. 655; *Neely* v. *Jones,* 16 W. Va. 625; *Jackson* v. *Hull,* 21 W. Va. 601. None of them intimate necessity of bringing the co-debtors' lands into the suit. Omission of that, in the statement of the requisites of such a suit, strongly implies that it is not one of them. Lack of any authority making it one is readily supplemented by legal principles and considerations of convenience. The lien and the land on which it subsists constitute the basis of the cause of action. The creditor is not necessarily concerned about the equities between his debtors. He is entitled to his money and cannot be rightfully subjected to undue delay, trouble or expense by their equities. They have their own remedies therefor. The situation is not the same as that of right to a mere personal decree against parties jointly liable in equity. Nor is it the same as the case in which the joint debtors or principal and surety and their respective properties happen, by some means, to be all in court and subject to its jurisdiction at the same time, in the same or different suits, and their rights so far ascertained that the equities can be enforced between the debtors without substantial detriment to the creditor.

To obtain such equitable relief, the debtor must be the bene-
ficiary of procedure, by his creditor, bringing all the parties and
the subject matter before the court, as in the causes of *Bank* v.
*Bates, supra, Bank* v. *Parsons,* 42 W. Va. 137; *Alderson* v. *Al-
derson,* 53 W. Va. 388; and *Wilson* v. *Carrico,* 46 W. Va. 466, so
as to enable the court to do him justice without subjection of the
creditor to injustice; or he must do it himself, by the exercise
of due diligence.  No doubt he may proceed against his co-
debtor, and most assuredly he can against his principal, in case
of suretyship, to compel him to pay by way of exoneration; and,
if he does so and thus gets all the parties and all the property
into court at the same time, he may have his equities awarded
to him by a proper decree or decrees, provided the circum-
stances are such as to enable the court to award them without
undue delay to the creditor.  When these causes were ready for
submission, the conditions requisite for decrees of exoneration
did not obtain in any of the numerous instances in which suits
were not then pending against the co-debtors in the Circuit
Court of Webster County.

None of the suits against co-debtors pending in that court,
for enforcement of liens against their property, disclose any
ground or cause for staying or withholding the decree of sale
in these cases.  If the First National Bank of Monongah, the
First National Bank of Fairmont and other creditors proving
their judgments in these causes and, at the same time, prosecut-
ing separate suits against appellant's co-debtors in the same
court and having matured them, had been the only creditors
interested in these causes, an order of consolidation postponing
the decree for the working out of equities among the co-debtors
might have been proper.  But no steps had been taken, nor any
situation brought about, that could have so affected the rights
of the First National Bank of Webster Springs, the American
Audit Company and numerous other judgment creditors who
have come into the suit and proved their liens.  Under these
circumstances, the utmost that can be awarded the appellant is
a consolidation or joint hearing as to the distribution of the
purchase money, after decrees of sale shall have been made and
executed, upon which decrees awarding exoneration by applica-
tion of the proceeds of sales of property of principal debtors to

payment of their debts proved and established in these suits, as well· as in one or more of the others, may be made.

Under these circumstances, each creditor of two or more debtors may assert his lien in each separate suit against his respective debtors, for he may resort to the lands of all of them for payment contemporaneously, although he can have only one satisfaction of his debt. The pendency of other suits and assertion in them of the same liens asserted here, constituted no tenable ground of exception to the finding and characterization of such debts as liens upon the lands of the appellant, even though he was a joint debtor or surety for the debts.

Nor did the court below err in its refusal or failure to consolidate such other causes, under the circumstances here shown, after the filing of the commssioner's report and before entry of the decree of sale. In so far as consolidation may be proper, or can avail the appellant anything, it may be made after execution of the decree of sale, when properly made.

For reasons already stated, the appellant's cross-bill seeking relief by way of exoneration by principals in debts as to which he is surety, which if allowed, would have delayed entry of the decree, was properly rejected. It came too late. These suits had been pending for years and were ready for final disposition. In so far as the cross-bill sought any relief against the plaintiffs in these causes, in respect of their debts, if any, it would have delayed them unreasonably, and, as to many of the debts, the appellant had no equities to be conserved or protected.

In some instances of judgments against the appellant and one or more other persons, personal decrees were entered against him alone. As the co-debtors are not made parties for purposes of relief against them, but only because they are interested in the proceedings against the land, there is no reason for personal decrees against them. Entire omission to make them parties is not reversible error, unless made the ground of an objection in the court below. *Norris et al.* v. *Bean,* 17 W. Va. 655, 670.

Reference of the causes with leave to file answers with the commissioner was obviously not erroneous. They might properly have been referred without any answers at all.

There was no error in the adjudication of certain liens of judgments enjoined temporarily in another suit. That injunc-

tion was awarded to protect the property of the Webster Springs Hotel Company, a corporation which became the owner of certain property formerly owned and used by the appellant in the conduct of a business carried on by him personally, under the name of the Webster Springs Hotel Co.. It did not restrain proceedings on the judgments against him or his property.

There was no ground for his exception to the commissioner's report for failure to include a judgment against the Back Fork Coal Co. and himself in favor of the First National Bank of Shinnston, which seems not to have presented any claim on account of it. The exception is based upon the danger of loss of collateral securities held with the note on which the judgment is founded and liability to enforcement of the judgment in another forum. The owner of the judgment has control of it and no rule or principle authorizing the debtor to take the control thereof out of its hands, in any manner or for any purpose, is perceived or has been suggested.

The appellant cannot complain of personal decrees of his indebtedness against certain alienees of lands subject to the liens of judgments rendered against him, nor of the failure of the court to subject his lands to sale first, to the end that their lands might be absolved from liability, in case of sufficiency of the proceeds of his to satisfy the liens. In these provisions of the decree, there may be, and probably is, error against them, but none prejudicial to him.

Preferring dismissal of the bills as to the coal conveyed to the West Virginia Midland Railroad Company, to reversal of the decree and a remand of the cause, some of the appellees including the First National Bank of Webster Springs, plaintiff in the Webster County suit, have offered to confess error in the subjection of that coal to sale by the decree and moved to dismiss the consolidated suits as to it. This motion goes beyond their right in the premises. A judgment lien creditor, after having brought a suit to enforce the lien of his judgment, and for the benefit of other such creditors, in which such others have established their liens, cannot wholly dismiss the suit as to all of the lands proceeded against nor as to any of them. He can dismiss only as to his own debt. *Honesdale Co.* v. *Montgomery,* 56 W. Va. 397, 399; *Shumate's Ex'rs.* v. *Crockett,* 43 W. Va.

491; *Lewis* v. *Laidley,* 39 W. Va. 422; *Bilmyer* v. *Sherman,* 23 W. Va. 656. The brief filed indicates that counsel making the motion represent only certain ones of the numerous creditors whose liens have been proved and reported, and they have disclosed no authority to speak for the others.

Whether such a motion respecting property clearly shown by the record not to be subject to any of the liens might be sustained, it is not necessary to inquire, for the tracts of coal in question do not appear to be beyond the reach of the liens. The bill in the suit instituted in Webster County assailed the conveyance thereof to the railroad company, on the ground of fraud and lack of consideration. Both charges were denied by McGraw, but not by the railroad company. As to it, the bill was taken for confessed. McGraw's denial of the charge of fraud was full, clear and positive. As to the other charge, it was qualified. His answer averred a conveyance of the coal to the railroad company, as a means of strengthening its financial standing, to enable it to obtain money for construction, extension and equipment of its railroad. It denies payment of consideration for the coal and avers that the respondent is the beneficial owner thereof. Considered as a whole, it amounts to a denial of absolute conveyance without consideration and sets up a trust in the coal of which the respondent is the beneficiary, subject to incumbrances put upon it in pursuance of the purpose of the conveyance, as disclosed by the answer. Moreover, relief against the conveyance considered as a voluntary one was barred by time, more than five years having elapsed between the date of the deed and that of the institution of the suit attacking it. Code, ch. 104, sec 14. Obviously, the coal so conveyed could not be made subject to the judgment liens, on the ground that the conveyance thereof was not made upon a valuable consideration. Nor could the deed be set aside on the ground of fraud, at the date of the decree, for lack of proof of fraud, either as to McGraw or the railroad company. The answer of the former, denying fraud, inured to the benefit of the latter and protected it. *Findley* v. *Cunningham,* 53 W. Va. 1. Nor could the decree stand upon McGraw's admission of equitable title to the coal in himself. That admission was not an allegation against the railroad company, to which it would have been bound to respond,

if it had been made against it.   There were no cross-pleadings between it and McGraw.   To warrant a decree between codefendants, a case between them must be made out by the pleadings and proofs between plaintiffs and defendants, on a matter properly arising out of them; *Smith* v. *Parsons,* 46 W. Va. 728; *Harrison* v. *Brewster,* 38 W. Va. 294; *Ruffner* v. *Huitt,* 14 W. Va. 737; *Hoffman* v. *Ryan,* 21 W. Va. 415; or there must be pleadings between the defendants in a proper case therefor. *Goff* v. *Price,* 42 W. Va. 384; *Burlew* v. *Quarrier,* 16 W. Va. 108; *Roots* v. *Salt Co.,* 27 W. Va. 483.   The cause of action by the creditors against the railroad company, admitted by McGraw, is neither of those alleged in the bill.   Though similar in nature, it is entirely different.   A clean, clear trust arising out of a contract, is not identical with one established against the will of the trustee, by operation of law, on the ground of fraud or lack of consideration, at the instance of a creditor. An absolute voluntary conveyance, impeachable by creditors, is not identical with one creating a trust for the benefit of the grantor, in terms, or made upon an agreement by which it can be set up under a deed absolute on its face.   Hence, there is no allegation of this cause of action in the bill, against either of the parties to the conveyance.

But the new cause of action or basis of relief admitted in the answer can be put into the bill by an amendment, and if, after that shall have been done, it is confessed by failure of both parties to answer, or by answers filed by them, there may be a decree upon it.   McGraw could not prove such a trust by parol evidence, against the terms of his absolute deed, *Poling* v. *Williams,* 55 W. Va. 69; *Troll* v. *Carter,* 15 W. Va. 567, unless the attendant facts constitute an independent equity.   As to whether they do, we express no opinion.   And as his creditors stand upon no higher ground than he, they probably could not do so.   This is effectually precluded by the statute of frauds and the rule against admission of parol evidence to contradict, vary or alter a written instrument.   But, if there is no occasion to resort to such evidence, or if the trust is evidenced by a collateral agreement or declaration thereof in writing, it may be established.   There is law inhibiting proof of it by oral evidence, against the will of the grantee, but none that forbids

averment thereof in a pleading, or enforcement thereof by a decree founded upon the grantee's judicial admission of its existence. Under the English statute of frauds, inhibiting proof of declarations of trust otherwise than by a written instrument, the defendant's answer signed by him and admitting a parol trust alleged in the bill is held to be a declaration of the trust so alleged. 1 Perry, Trusts and Trusteees, sec. 84; Lewin, Trusts. 1 Am. Ed. p. 70, top p. 56. This requirement as to proof of trusts, having been omitted from our statute of frauds, *Fluharty* v. *Beatty,* 4 W. Va. 514; *Bank* v. *Carrington,* 7 Leigh 566; *Currence* v. *Ward,* 43 W. Va. 367, there is no reason why the defendant's judicial confession or admission of it, express or implied, when it is alleged against him in a bill, should not be permitted to establish it against him. *Myers* v. *Myers,* 167 Ill. 52. Such an admission respecting a parol contract of sale of land, together with failure to plead the statute, constitutes a sufficient basis for a decree of specific performance. *Fleming* v. *Holt,* 12 W. Va. 143. 'Neither the statute nor the rule against parol evidence forbids the making of parol contracts. They are only means of avoiding them, or protection from enforcement thereof, when properly invoked. Sec. 1, ch. 71. Code, will not be contravened. The title passes by deed in execution of the decree.

As to the coal land in question, the decree is, therefore, clearly erroneous for two reasons; (1) lack of a cause of action as to it, shown by the pleadings, which, however, may be curable by an amendment based upon the admission of equitable title found in McGraw's answer; and (2) failure to make the Morton Trust Company a party as trustee.

A cross-assignment of error predicated on the rule *lis pendens,* attacks the decree because of its failure to charge a great many liens on certain tracts of land sold and conveyed by the judgment debtor, two town lots sold but not conveyed and a tract of land leased for coal mining. The argument submitted in support of this cross-assignment does not adhere uniformly to the rules and principles of the doctrine relied upon. It is correctly assumed that, in this class of cases, the statutory notice need not be given, and that the common law doctrine of lis pendens governs. *Rardin* v. *Rardin,* decided at this term. The mere sub-

sistence of a judgment, as a lien on land, after recovery thereof, is not a pending suit, within the meaning of the rule, nor is an action seeking a personal judgment a pending suit to subject the debtor's land.   On recovery of such a judgment, the action· in which it was obtained is ended.   The lien thereof on the land is given, not by the judgment, but by the law making it a lien. In the action, the land is not mentioned at all, nor proceeded against.   The proceeding against the land is the suit to enforce the lien of the judgment.   In that suit, the territorial scope of the operation of the rule *lis pendens,* according to the weight of authority, is coextensive with the territorial jurisdiction of the court in which the suit is pending.  25 Cyc. 1477; 17 R. C. L. p. 1015, sec. 8.   Title Lis Pendens; Bennett, Lis Pendens, pp. 84-90.   Hence, it is clear that a suit in a circuit court of this state, in which all the lands of the debtor within the limits of the state may be subjected to sale to satisfy liens thereon, may bind his real estate situate in a county other than that in which the suit is pending.   But the mere institution of the suit and filing of a bill is not enough to effect that result.   Noth-' ing is bound until it is brought into the suit by allegations respecting it, sufficient to bring it within the actual, not the merely potential, jurisdiction of the court.   The bill must charge the property and so describe it as to put an intending purchaser upon inquiry as to whether it is actually involved in the suit. Bennett, Lis Pen. pp. 153-161; 17 R. C. L. pp. 1019-1021, sec. 14-16. Tit. Lis Pendens; 25 Cyc. 1462.   And, since the demand, claim or right asserted against the property, in this case, the lien of each creditor, is as much a part of the *res litigiosa* as the property itself, there can be no pending suit as to it, until it has been asserted in the suit, by allegations of the bill or otherwise.   The rule imposes no obligation upon a ·purchaser to look beyond the proceedings in the suit, either for the property proceeded against or the demands asserted against it.   He is not bound to anticipate its extension to additional property nor the inclusion of other rights or claims against it.   He is bound in both respects by the actuality of the suit, not its potentiality. One who purchases before the introduction of a new or additional cause of action, into a pending suit, by amendment, is not a *pendente lite* purchaser as to the property newly brought in.

*Stout* v. *Philippi etc. Co.* 41 W. Va. 339; *Hulen* v. *Chilcoat,* 79 Neb. 595; *Norris* v. *Ile,* 152 Ill. 190; *Miller* v. *Sherry,* 2 Wall. (U. S.) 237; *Bridger* v. *Bank,* 126 Ga. 821; *Holland* v. *Bank,* 16 R. I. 734; 17 R. C. L. pp. 1035-6, sec. 31, Lis Pendens; 25 Cyc. 1472; note to *Stout* v. *Philippi etc. Co.,* 56 A. S. R. 867; Bennett, Lis Pendens, pp. 97, 160, 204.

The numerous judgment creditors often made parties defendant to a suit brought for enforcement of judgment liens cannot be deemed to have asserted their respective liens, as of the date of the filing of the bill, for the purpose of binding purchasers under the rule *lis pendens.* There is no assertion of any claim of right against the property described in the bill by any person other than the plaintiff or plaintiffs. Of course, the suit may avail all of the creditors made parties as defendants. They may file answers or petitions joining in the prayer of the bill or prove their liens before the commissioner, as may also creditors who are not formal parties at all, but they are not actors or movers in the suit until they set up and insist upon their liens in some way. Hence, as to their liens, there is no pending suit, within the meaning of the rule, until that occurs. Plaintiffs in such bills make all persons parties who appear by the records to be lienholders, and, in many cases, the judgments so alleged or recited have been reduced or wholly extinguished by payments. Nothing definite as to their amounts can be certainly known, until the creditor actually comes into the suit and defines his claim. A commissioner cannot properly report an apparent lien against the lands of the judgment debtor, nor can the court properly decree it to be an actual lien, unless the creditor has appeared and proved it, even though the bill reciting it has been taken for confessed as to the debtor. *Armstrong etc.* v. *Painter,* 75 W. Va. 393. Such a bill is only potentially, not actually, the bill of a judgment creditor, unless he is a plaintiff therein, or has in some permissible way claimed the benefit thereof.

Proceedings to determine the scope of the several suits, with reference to the rule *lis pendens,* by application of the rules and principles above stated, we observe that the lease of the tract of coal land, situated in Taylor County, antedated the institution of the suit brought in that county, and also the one brought in

Webster County. It is dated April 4, 1914, and the American Audit Company's bill was filed at November rules 1915, and Wysong's bill in Webster County at November rules, 1914. The two town lots purchased by Kenna Rexroad, but not conveyed to him, are in Pocahontas County, in which none of these suits were instituted. His verbal contract of purchase, part-performed, seems to date from October 18, 1915, a day earlier than that of the filing of the bill in Taylor County and that of the filing of the bill in Webster. One of the large conveyances to Garvan hereinbefore referred to, bears date, March 18, 1914, and the other, April 3, 1915, the subject matter of the first being in Webster County and that of the latter largely in other counties. The suit brought in Webster County was originally instituted by W. S. Wysong, whose bill was filed at November rules 1914. As to the first tract, 10,175 acres of coal, Garvan is, therefore, plainly not a *pendente lite* purchaser with reference to Wysong's and the American Audit Company's bills. Whether he is as to the other, an undivided half of 13,366 acres of coal, depends upon the scope of Wysong's bill and the liens asserted in his suit, at the date of the deed.

It is contended, however, that all of these lands are within the scope of the bill filed by the Union Trust and Deposit Company, in Jefferson County, November 20, 1911. That bill proceeds only against the lands situated in Jefferson County. It prays neither for sale nor rental of any other lands and it alleges, on information and belief, that such lands comprise all of the real estate on which the judgment of the plaintiffs is a lien. Notwithstanding these limitations, it is urged that the scope of the bill is co-extensive with the boundaries of the state and McGraw's ownership of real estate therein, because it propounds interrogatories requiring the debtor to disclose; (1) what real estate he owned that was subject to the lien of the plaintiffs, with specific descriptions of the several tracts; (2) the liens thereon; and (3) the annual rental value of each tract, giving the names of the tenants and lessees and stating whether the lands are rented or leased by the month or by the year. Whether this sufficed to bring all of the debtor's lands within the jurisdiction of the court, by reason of the purpose the bill indicated and the description, if any, impliedly, if at all, found in the interrogatories, read in connection with the allegations of

the interogatories, read in connection with the allegations of the bill, it is unnecessary to inquire, because none of the judgments or liens as to which complaint is made, by this cross-assignment of error, were proved or asserted in the Jefferson County suit. Only two were asserted, one of which was satisfied by payment before that cause was transferred to Webster County and consolidated with the others. And, if the bill brought in any lands outside of Jefferson County and consolidation of that suit with the others would carry those lands into the latter, it did not occur until long after all four of the tracts of land in question had been leased, sold and conveyed.

Neither the original, nor the amended, bill of Wysong purports to charge any land lying beyond the limits of Webster County. Hence, they do not include the Rexroad lots in the Town of Durbin, Pocahontas County. Nor, if inclusion in Commissioner Woodzell's report made under a reference on Wysong's amended bill would suffice to bring in these two lots, it does not do so. It is limited to property in Webster County. The second amended bill which may be broad enough to include them was not filed until April rules 1916, several months after Rexroad's purchase. Obviously, therefore, he was not a *pendente lite* purchaser.

As to whether any of the property conveyed by the second deed to Garvan, dated, April 3, 1915, was included in either of the bills filed by W. S. Wysong, is not entirely clear, but none of it seems to have been. In addition to the coal conveyed to the West Virginia Midland Railroad Company and some other smaller tracts of land and town lots, it alleged title in McGraw to four large tracts, describing them as being in Holly District of Webster County and as containing 2,655, 1,000, 908 and 2,000 acres, respectively. His amended bill attacked the conveyance of the coal to the railroad company, set up a lot of additional judgments, added several relatively small tracts subject to vendors liens, but did not bring in any additional large tracts, nor disclose any purpose to charge any lands other than those mentioned in it and in the original bill. Woodzell's report on a reference made under a decree entered after the filing of the amended bill, credits McGraw with ownership of some tracts corresponding in description with those mentioned in the origi-

inal bill, in respect of area and location, and they seem to correspond, in point of location, with the 10,175 acres conveyed by the first deed to Garvan. The bills were filed after the date of that deed, but before it was recorded, wherefore the lands conveyed by it stood upon the records in McGraw's name. Why Woodzell reported them as belonging to McGraw after the deed was recorded, is not disclosed. The property conveyed by the second deed lies largely in Nicholas and Greenbrier Counties and those bills were apparently not intended to reach any lands lying beyond the boundaries of Webster County. If Woodzell's report apparently mentioning some of the lands conveyed by the second deed can be deemed to have brought them into the suit, they came in after Garvan's purchase, for the order of reference was not entered until June 2, 1915, about two months after the date of the deed, and not completed until September 17, 1915. The first reference to these lands, found in any pleading, occurs in the second amended bill filed at April rules, 1916, nearly a year after the date of the deed. It is manifest, therefore, that, under the principles above stated, there was no *lis pendens* as to these lands lands, at the date of the conveyance thereof, unless we are mistaken as to whether any of them were included in the original and first amended bills. As to whether any of them were or not, the case will be left open for inquiry and determination in the court below, if any of the appellees shall be advised to prosecute such inquiry.

The commissioner's final and supplemental reports fixed the liens on the Delmar Coal Company tract, the Garvan tracts and the Rexroad lots, with reference to the dates of the docketing of judgments, on the theory that none of them were affected by any *lis pendens,* and that, under the statute, a docketed judgment takes precedence over the right of a purchaser whose deed has not been recorded at the date of the docketing of the judgment. The only complaint in the cross-assignment of error, against his report or the decree of the court, respecting this ruling, is the unfounded one predicated on the inapplicable rule *lis pendens,* as we understand the argument submitted.

As a purchaser is not required to look beyond the scope of the bill, and other pleadings filed at the date of his purchase, in order to protect himself against the final decree, and is not

bound by new subjects or causes of action afterward introduced by amendment or otherwise, the doctrine of relation to the date of the service of process, so as to preclude right of purchase between such date and that of the filing of the bill, has no application to any of the questions raised; wherefore there is no occasion to review the holdings to that effect, found in Harmon v. Byram, 11 W. Va. 511; Stone v. Tyree, 30 W. Va. 678 and O'Conner v. O'Conner, 45 W. Va. 354.

If the commissioner's report and the decree charge the coal and land covered by the lease to the Delmar Coal Company, only with the liens docketed at the date of the lease, as is suggested, they should be corrected in the court below on the remand of the cause. Such liens bind the land as if there were no lease on it. Those not docketed before the lease was recorded and those subsequently recovered bind the land subject to the lease, the lease taking precedence over them. For correction of this error, if found to exist, and any others that may appear, the cause will be open in the trial court.

For lack of necessary parties, particularly the Morton Trust Company, Trustee, the decree complained of will be reversed and the cause remanded with leave to amend in all proper respects. Costs in this court will be awarded to the appellant.

*Reversed and remanded.*